526 So.2d 1313 (1988)
STATE of Louisiana, Plaintiff-Respondent,
v.
Willie Ray HUNTLEY, Defendant-Relator.
No. K87-854.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1988.
*1314 John M. Crochet, Public Defender, Lake Charles, for defendant-relator.
Richard Ieyoub, Dist. Atty., Lake Charles, for plaintiff-respondent.
Before GUIDRY, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
As the result of an undercover police investigation, Willie Ray Huntley (hereafter Huntley) was indicted on May 13, 1987, for three counts of distribution of marijuana, a violation of LSA-R.S. 40:966(A)(1). Huntley filed a motion for discovery on June 22, 1987, which, in part requested authorization:
"... [to inspect] the initial incident or offense report(s), together with all reports, memoranda or other internal State documents made by the District Attorney or by agents of the State in connection with the investigation or prosecution of the case, as well as all statements made by witnesses or prospective witnesses, other than defendant, to the District Attorney or the agents of the State, ..."
Huntley also requested the names of the undercover agents to whom he allegedly made an oral statement.
With reference to the request for the initial report, the State responded: "[The] initial offense report [is] attached, otherwise, [the] State refuses to provide material requested in ... defendant's motion. Patrick Antoine arranged the deals and was present." As part of its answer the State attached a copy of an "Initial Offense Report". Each report recited the location of the offense, the time of the arrival of the police, and that the complainant, the Calcasieu Parish Sheriff's Office Narcotics Division, was involved in a narcotics investigation. Each report stated that no victims were present at the scene of the offense and that "[a] supplemental report reflecting the complete investigation will be forthcoming." Additionally, with regard to Huntley's request to identify the agents to whom he made oral statements, the State responded as follows: "Defendant made oral statements during the commission of each offense to undercover agents for CPSO, and in [the] presence of Patrick Antoine."
Huntley objected to the State's answer to his motion for discovery, contending: (1) it was insufficient because it "fails to include or authorize inspection of the `initial offense report' as defined by R.S. 44:3A(4) in that no report is attached or authorized or the report attached or authorized does not include all information obtained in the initial investigation of the complaint."; and (2) the State should have been ordered to specifically name the undercover agents to whom Huntley spoke during the commission of each offense.
*1315 The trial court overruled Huntley's objections, finding: (1) that R.S. 44:3A(4) was inapplicable, and therefore the State was not required to deliver the supplemental investigation report because it was the result of an undercover investigation in which there was not a complaint; and (2) the State sufficiently complied with LSA-C.Cr.P. Art. 716(B) by admitting that such statements were made to undercover agents at a particular place, that such statements were not the result of police interrogation, and that they were made to Calcasieu Parish Sheriff's Officers in the presence of Patrick Antoine.
We granted Huntley's application for a writ of certiorari and called the record up for briefing and oral argument.

ASSIGNMENT OF ERROR NUMBER ONE
Huntley contends that the initial offense reports supplied to him pursuant to his discovery request were insufficient, and that the essence of the initial investigation was placed in a supplemental report which is exempted from public record status as provided in LSA-R.S. 44:3A(4). The State argues that undercover narcotics operations should be excluded from the general law requiring disclosure for three reasons: (1) R.S. 44:3A(2) and B exempt records revealing or tending to reveal the identity of a confidential source of information; (2) R.S. 44:3A(5) exempts records revealing or tending to reveal the identity of an undercover police officer; and (3) undercover narcotics operations are exempt from R.S. 44:3A(4) because they are not made as a result of a "complaint."
R.S. 44:3A(4) provides in pertinent part:
"A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, public health inspectors, or public health agencies, correctional agencies, or intelligence agencies of the state, which records are: ...
(4) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record." (Emphasis added.)
In State v. Shropshire, 471 So.2d 707 (La.1985), the Supreme Court interpreted R.S. 44:3A(4) to mean that the entire initial report, however labelled, was subject to discovery as a public record, and ordered that a motion to compel production of an initial report was valid despite its label as an incident report or its contents being investigative in nature. The court stated:
"The statute, in distinguishing between the initial report of the officer or officers investigating a complaint and any followup or subsequent report or investigation, draws a clear line of demarcation between the initial report and any subsequent investigative reports. The initial report of the investigating officers constitutes a public record and is subject to discovery." 471 So.2d at 709.
As an ancillary to Shropshire the Supreme Court in State v. McEwen, 504 So.2d 817 (La.1987), held that the "report" referred to in R.S. 44:3A(4) is more than the first document filed. In McEwen the court condemned the practice of putting limited information in a document entitled "initial report" and placing the remainder in a "supplemental report", all information in both documents resulting from the same initial investigation of a complaint. Specifically, in McEwen the court stated:
"The intent of La.R.S. 44:3A(4) is to declare that the entire initial report of the investigation following a complaint constitutes *1316 a public record subject to discovery. The reporting officer may not defeat the purpose of the statute by including only selective information in the initial report and placing the remainder of the information obtained in the initial investigation in a separate supplemental report. The initial report should include all information obtained in the initial investigation of the complaint, especially when the initial investigation following a complaint results in the requesting party's arrest."
In the present case, the facts show that all three reports provided to Huntley indicated that a supplemental report would be filed later. Thus, relying upon the holdings of Shropshire and McEwen, Huntley contends that the supplemental reports are discoverable.
The State argued to the trial court, and reiterates here, that the reports supplied pursuant to the discovery request were sufficient under the statute under the peculiar type of investigation used in this case, i.e., the investigation of this case was part of an ongoing undercover narcotics investigation. In particular the State points to the language of R.S. 44:3A(4) which describes the initial report as flowing from the investigation of a complaint. The State argues that the instigation of an undercover narcotics investigation does not result from a complaint in the usual sense, i.e., a call for police intervention from a witness to a crime or a victim of a crime, but from motivation within the police department.
We find no error in the trial court's ruling. R.S. 44:3A(5) specifically provides that "[r]ecords containing the identity of an undercover police officer or records which would tend to reveal the identity of an undercover police officer;" are not subject to public disclosure. An undercover narcotics operation would contain almost exclusively the undercover officer's statements since it does not have victims per se as in most crimes, and there generally are no witness interviews. It is also by nature an ongoing operation, markedly different from those criminal investigations which arise as the result of a complaint made to elicit police intervention. Accordingly, we find it extremely important that when the legislature added R.S. 44:3A(4) in 1984 it limited public accessibility to reports of the officer or officers investigating a complaint, and did not amend the earlier exclusion provided by R.S. 44:3A(5) which excluded the disclosure of the identity of undercover police officers. Therefore we find that in the present case Shropshire and McEwen do not mandate disclosure of the supplemental report as a public record since it would reveal records containing the identity of undercover police personnel who were involved in a narcotics investigation.
For the foregoing reasons, Huntley's assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Huntley next argues that the trial court erred in not ordering the State to disclose the names of undercover agents to whom he allegedly made oral statements. We disagree.
LSA-C.Cr.P. Art. 716(B) provides, in pertinent part:
"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made."
Huntley's only argument is that the State's reference that his statements were made to "undercover agents of CPSO" is insufficient because it does not specifically name the individuals involved.
C.Cr.P. Arts. 716, et seq. govern the relationship of the prosecutor and defendant in the realm of criminal discovery. The purpose of these articles is "to eliminate unwarranted prejudice which could arise from surprise testimony." State v. Williams, 457 So.2d 902 (La.App. 3rd Cir.1984), writ denied, 461 So.2d 313 (La.1984). The specific purpose of C.Cr.P. Art. 716 is to give *1317 the defendant notice of the statement the State intends to use so that the defendant can have a fair opportunity to confront the evidence. State v. Burns, 504 So.2d 124 (La.App. 2nd Cir.1987), writ denied, 505 So.2d 1142 (La.1987). Trial by ambush through lulling the defendant into a misapprehension of the strength of the State's case by misleading State responses to discovery requests results in basic unfairness and would constitute reversible error. State v. Jackson, 450 So.2d 621 (La.1984).
Whether the State's answer is responsive to the statute's directive to disclose "to whom" the statements were made, must be examined in light of the purpose of avoiding trial by surprise and prejudice to defendant's ability to test the State's case. The precise question before us, one which our research reveals is res nova, is whether specific identity by name is required or if information, in light of the circumstances of this particular case, was sufficient compliance with C.Cr.P. Art. 716(B) to put the defense on notice as to the statements in question.
We conclude that the State's answer substantially complied with the requisites of C.Cr.P. Art. 716(B). Where considerations are present which cause concern over divulgence of the listener's name, such as confidentiality of any informant promised anonymity, or as in the case sub judice an undercover officer operating in perilous situations where disclosure of a name might bring harassment, or hinder the effectiveness of future or ongoing operations, substantial compliance by notification sufficient to identify the statement to be used will satisfy the codal discovery provisions. Furthermore, undercover narcotics operations by nature involve highly trained specialists operating at various locations within the state who depend on anonymity not only to successfully complete their investigative work but, more importantly, to protect their lives. In the present case Huntley was advised: (1) that the statements were made; (2) of the locations of where the statements were made; and (3) that the statements were made to two undercover agents for the Calcasieu Parish Sheriff's Office in the presence of Patrick Antoine. Viewing the State's disclosures, in light of the circumstances involved, we find that the discovery response did not thwart the purpose of the statute requiring discovery of the statements made by Huntley. Moreover, Huntley has not made a showing that further specificity would be material to the development of his defense, that any constitutional rights have been violated, or that the absence of the names of the undercover officers would prejudice him in any way.

This assignment of error lacks merit.

DECREE
For the foregoing reasons, defendant's writ of certiorari is denied, and this case is remanded to the trial court for trial on the merits.
WRIT DENIED.