566 So.2d 1038 (1990)
STATE of Louisiana
v.
Barron CAMPBELL.
No. K 90-71.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1990.
Richard Ieyoub, Dist. Atty., Elaine Solari, and David Kimball, Asst. Dist. Attys., Lake Charles, for the State/Application.
Evelyn M. Oubre, Lake Charles, for defendant/respondent.
Before DOMENGEAUX, C.J., and GUIDRY, FORET, STOKER, DOUCET, LABORDE, YELVERTON, KNOLL and KING, JJ.
KING, Judge.
The only issue presented by this writ is whether a defendant is entitled to an initial offense report concerning his arrest and pending criminal charges where production and disclosure of the initial offense report would not reveal the identity of any confidential informant or undercover police officer or any information about ongoing undercover criminal operations.
*1039 Barron Campbell (hereinafter the defendant) was charged with two counts of distribution of cocaine in violation of La.R.S. 40:967 A(1). Defendant was arraigned and pled not guilty. Defendant, through the process of pre-trial discovery, requested a copy of the initial offense report concerning his arrest and pending criminal charges. The State, contending La.R.S. 44:3(A)(4)(c) permitted it to withhold disclosure of such report, refused to disclose or produce a copy of the initial offense report. The trial court conducted a contradictory hearing and, after making an in-camera inspection of the initial offense report, determined the initial offense report was discoverable and ordered the State to furnish a copy to the defendant. The State objected to the ruling of the trial court and sought supervisory writs from this Court. The trial court stayed its order pending a ruling by this Court on the State's writ application.
This Court granted the application and ordered the matter docketed for briefing and oral argument. Due to the importance of the legal issue involved, this Court also permitted the filing of amicus curiae briefs and took the extraordinary step of considering this writ en banc to settle the law in this Circuit relative to discovery of initial offense reports. We now issue a written opinion, affirm the ruling of the trial court, deny the writ, and remand the matter to the trial court for further proceedings.

FACTS
On August 31, 1989, the defendant filed a Motion For Discovery And Inspection which sought, among other things, the initial offense report (hereinafter the report) prepared in connection with his arrest and the pending criminal charges against him. The State filed an answer denying production of the report contending it was privileged because the pending criminal charges resulted from an undercover criminal operation. The defendant objected to this answer and a contradictory hearing was held in Open Court on January 4, 1990, to determine whether the State should be ordered to produce and disclose the report.
The trial judge reviewed the report at the bench in Open Court during the hearing in the presence of only the Assistant District Attorney and the court reporter, as the defense attorney had been asked to step away from the bench so that the Assistant District Attorney could explain the State's reasons for withholding the report only to the trial judge for purpose of the record. The record reflects that the Assistant District Attorney explained to the trial judge at the bench that the information contained in the report was exempted from disclosure by statute because it resulted from undercover criminal operations. When the trial judge inquired as to whether the information sought to be withheld would reveal sensitive or ongoing undercover criminal operations, or if the report simply contained information of a concluded criminal drug investigation, the State responded that it did not matter, because the State contended La.R.S. 44:3(A)(4)(c) totally exempts from disclosure any and all information obtained from undercover criminal operations. The trial judge disagreed and, after reviewing the report in-camera, ordered disclosure of the report finding that production and disclosure of the report would not reveal information of sensitive or ongoing undercover criminal operations or the identity of confidential informants or undercover police officers.
The State sought supervisory writs seeking reversal of this adverse ruling, urging as error the trial court's interpretation of La.R.S. 44:3(A)(4)(c). The trial court stayed its order pending a decision by this Court on the State's writ application.

ASSIGNMENT OF ERROR
The State contends that the trial court erred in ordering the disclosure of the initial offense report prepared in connection with the arrest and pending criminal charges against the defendant, because it contains information resulting from an undercover criminal operation.
The controversy in the instant case involves La.R.S. 44:3, and the recent amendments to that statute. The State argues that, while the statute specifically labels an *1040 initial offense report as a public record, it also protects certain information from public scrutiny or disclosure such as an initial offense report containing information obtained from an undercover criminal operation. La.R.S. 44:3(A)(4)(c) provides that:
"Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations."
Initial offense reports were historically considered confidential internal law enforcement documents and were generally free from disclosure. State v. Gabriel, 450 So.2d 611 (La.1984). Significantly, however, the courts required disclosure of such reports even before they were labelled a "public record" in certain instances. In State v. Franks, 363 So.2d 518 (La.1978), the Supreme Court held:
"[W]hen an officer's testimony at trial is from his report rather than from his memory, that is, if the testimony is the product of past recollection recorded rather than present memory refreshed, the trial judge should require production of the report for defense inspection. State v. Tharp, 284 So.2d 536 (La.1973); State v. Foret, 315 So.2d 278 (La.1975). The same ruling should follow where it is shown that a witness has referred to his report or notes, with him on the stand, even though presumably only to refresh his memory while testifying. State v. Perkins, 310 So.2d 591 (La.1975)." State v. Franks, 363 So.2d 518, at page 520 (La.1978).
As evidenced by this jurisprudence, inclusion of certain information in an initial offense report has never served as an absolute ban against its disclosure. Public access to initial offense reports was, however, an exception to the general rule allowing the government to withhold the documents from public scrutiny.
In 1984, the Legislature amended La.R.S. 44:3 to classify the initial offense report as a public record. (Acts. 1984, No. 945). Our State constitution provides that "[n]o person shall be denied the right to... examine public documents, except in cases established by law." La.Const.1974, Art. 12, § 3. The Public Records Law must be liberally construed so as to extend rather than restrict access to public records by the public. Webb v. City of Shreveport, 371 So.2d 316 (La.App. 2 Cir.1979), writ den., 374 So.2d 657 (La.1979); Bartels v. Roussel, 303 So.2d 833 (La.App. 1 Cir. 1974), writ den., 307 So.2d 372 (La.1975).
In State v. Shropshire, 471 So.2d 707 (La.1985), the Louisiana Supreme Court interpreted the amended statute and stated that the former jurisprudence governing the disclosure of offense reports had been legislatively overruled. The Court found that the disclosure of the initial offense report was required and only in an exceptional case could the State withhold the information contained therein.
The Supreme Court has since consistently interpreted La.R.S. 44:3 broadly. In State v. McEwen, 504 So.2d 817 (La.1987), the Court held that the initial offense report "should include all information obtained in the initial investigation of the complaint, especially when the initial investigation following a complaint results in the requesting party's arrest." The Supreme Court has also held that the investigating officer or officers could not defeat the intent of the statute by selectively including only some information uncovered during the initial investigation in the "initial report," and concealing the rest in an unobtainable "supplemental report." State v. Raggio, 508 So.2d 59 (La.1987). This broad interpretation of the disclosure requirements of the statute was most recently followed by the Second Circuit Court of Appeal in State v. Hall, 549 So.2d 373 (La.App. 2 Cir.1989), and State v. Sanders, 539 So.2d 114 (La.App. 2 Cir.1989), writ den., 546 So.2d 1212 (La.1989).
From these cases, it is clear that the initial offense report does not merely refer to a document, but to the information contained in the documents. It is this information, comprising all the facts learned by the officer or officers who conducted the initial investigation of a complaint, that is a matter of public record. Our constitution does not allow the State to withhold *1041 this information from a requesting party, "except in cases established by law."
The latest pronouncement by the Louisiana Supreme Court involving this issue again interpreted La.R.S. 44:3 broadly. In Cormier v. DiGiulio, 553 So.2d 806 (La. 1989), the Supreme Court rejected the distinction argued by the State, which would have limited the effect of La.R.S. 44:3 to reports of investigations which arose from citizen complaints. In that case, the Jefferson Parish Sheriff refused to produce an initial offense report contending that the internal police-initiated investigation was not the result of a "complaint" under the statute and, therefore, the disclosure requirements of La.R.S. 44:3 were not applicable. The Supreme Court disagreed, holding:
"The plaintiff's contention that this language means that such [initial offense] reports are only public records when the investigation results from a complaint from the public is without merit.... `Complaint' in this context includes not only something that is the cause or subject of protest or outcry but also something the police reasonably suspect will be and therefore have a right to investigate." Cormier v. DiGiulio, 553 So.2d 806, at page 807 (La.1989).
What forms the basis of this controversy before this Court is the meaning of a 1988 amendment to La. 44:3 which states, "[n]othing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations." La.R.S. 44:3(A)(4)(c). The State insists this section of the statute totally bars access to an initial offense report which contains information of any undercover or intelligence operation that has occurred at anytime. The State contends it does not matter whether such an operation was ongoing or concluded since the State's position is that an initial offense report containing such information is never subject to disclosure.
The defendant argues that La.R.S. 44:3(A)(4)(c) only protects undercover or intelligence operations which are ongoing at the time a request is made for such an initial offense report. Relying on many of this Court's recent dispositions of unreported writ applications involving this same issue,[1] the defendant maintains that to hold otherwise would be to give too broad a construction to this provision.
The word "ongoing" does not appear in La.R.S. 44:3(A)(4)(c). The first mention of "ongoing" in relation to this statute was apparently made in State v. Huntley, 526 So.2d 1313 (La.App. 3 Cir.1988). In that case, the defendant sought to obtain a supplemental offense report[2] which contained information about an undercover narcotics operation. This Court noted, as one of its reasons for denial of the supplemental offense report, that it pertained to ongoing operations regarding narcotics investigations. This observation was apparently made to emphasize the sensitive nature of ongoing narcotics investigations. In State v. Simon, 544 So.2d 610 (La.App. 3 Cir. 1989), this Court again denied access to a supplemental offense report and cited Huntley for the proposition that disclosure of such information would reveal information about ongoing criminal narcotics operations.
Recently, both the State and defendants have sought supervisory guidance from this Court on whether initial offense reports, *1042 which might reveal information about undercover or intelligence operations, were required to be disclosed. Because this Court had already recognized the importance of, and given protection to, information regarding ongoing criminal operations in supplemental reports (Huntley and Simon), that same importance and protection was extended to information about ongoing criminal operations contained in initial offense reports. This Court recognized that such information is sensitive in any offense report. Therefore, this Court ordered the trial court to examine the initial offense reports in-camera and to exclude information which would reveal facts pertaining to ongoing criminal operations, and to then order disclosure of the remainder of the initial offense report.[3]
On more than one occasion, the Supreme Court has apparently considered the sensitive nature of ongoing narcotics operations as well. In State v. Gotro, 532 So.2d 102 (La.1988), Justice Lemmon mentioned, in his dissenting opinion, the importance of protecting "narcotics investigations of an ongoing series of related criminal acts." (Emphasis supplied.) In recent decisions, the Supreme Court has refused to consider rulings from this Court which ordered the trial judge to conduct an in-camera examination of an initial offense report and to order exclusion of only that information in the initial offense report which would reveal information about ongoing undercover or intelligence operations or names of confidential informants and undercover police officers, and to then order disclosure of the remainder of the information contained in the initial offense report. See, State v. Kevin Winbush, Darlene Walker, Milton Lewis, 563 So.2d 1156 (La.1990); State v. Michael Nelson and State v. David Terrell Albert, 561 So.2d 102 (La.1990); State v. McGee, 556 So.2d 599 (La.1990). It appears the Supreme Court had been presented with this issue, and had been satisfied with this Court's interpretation of La.R.S. 44:3(A)(4)(a)(c).
The State relies on a literal textual reading of La.R.S. 44:3(A)(4)(c) that would eternally make a sealed archive of any initial offense report, no matter how old, just because it contained information about an undercover or intelligence operation. Such a construction would severely limit the constitutional right of access to public records. The State does not identify any rational basis supporting such an interpretation of the statute. The State only argues that because "ongoing" is not included in the text of the statute, that it should not be read into the statute. However, this does not advance the resolution of this issue for, on the other hand, neither does the statute read "whether ongoing or not." If the legislature intended such a reading as the State professes, surely it could have couched its intent, that of barring discovery of a broad category of documents, in much clearer and much more direct language. Similarly, our Supreme Court has had the opportunity on numerous occasions to validate such a literal reading of the statute; yet, it has never so much as hinted that the statutory exception in La.R.S. 44:3(A)(4)(c) should be so read. On the contrary, its decisions, tangential to this point, suggest that our holding on this issue in Winbush, et al, Nelson, Albert, and McGee, and in other unreported writs, comport with its own views. The State's argument is simply contrary to the statutory and jurisprudential historical evolution requiring the courts to construe the public records law in favor of the public's right of examination of initial offense reports.
Unlike earlier amendments to this statute, the 1988 amendment was not accompanied by any resolution or stated purpose defining what the legislature intended by adding Subpart (A)(4)(c) to La.R.S. 44:3. Nevertheless, the legislative purpose of the statute is apparent from reading the other sections of the statute. Subpart (A)(1) is intended to protect records and files involved in pending criminal litigation until such litigation is concluded. Subparts (A)(2) and (A)(5) are intended to protect the identity and safety of undercover law enforcement personnel and confidential informants. Maintaining the integrity of internal *1043 affairs and procedures of law enforcement agencies is protected by Subpart (A)(3). Juvenile records are protected by Subpart (A)(6), and Subpart (A)(7) protects the identity of those involved in public health disease investigations. Considering the purpose of those provisions, it appears that the legislature intended the subpart at issue, La.R.S. 44:3(A)(4)(c), to only allow law enforcement agencies to shield from public scrutiny ongoing undercover operations initiated for crime detection. There is, however, nothing in the statute which would indicate that the legislature intended these undercover or intelligence operations to forever remain secret once they have ended.
Therefore, we hold that the statutory construction of La.R.S. 44:3(A)(4)(c) offered by the State is overly restrictive and that a reasonable, common sense interpretation of this provision requires striking a balance between the public's constitutional right of access to information in initial offense reports with the genuine interest of not needlessly compromising ongoing criminal undercover or intelligence operations. Hence, we hold the statute only limits public access where an initial offense report reveals information regarding ongoing criminal undercover or intelligence operations. Once such operations are concluded, the need for secrecy is no longer present. Where there is no longer a need for protection, no purpose can be served by keeping the information secret.
It is noted that even though information may be subject to disclosure, because the undercover or intelligence operation it refers to has ended, it may, nevertheless, be withheld under some other provision of La. R.S. 44:3 (for example, if the initial report names confidential informants or undercover officers). It is, however, only the statutorily protected information which should be withheld and not the initial offense report in its entirety. The statute does not authorize a total exclusion of all the information in the report simply because some of the information must be withheld.
It should also be noted that, even where the information falls within an exception under La.R.S. 44:3 and could be properly excluded, a criminal defendant is entitled to the information if he already knows it. In four companion cases, the Supreme Court reviewed the state's refusal to disclose an initial offense report. The State's sole argument was that the disclosure would reveal the identity of undercover officers. The defendants claimed the officers' identities were already known to them. The cases were remanded to the trial court with the instruction that, if the court found that the defendants knew the officers' identities, the initial offense reports were to be disclosed. State v. Raney, 532 So.2d 104 (La.1988); State v. Gaines, 532 So.2d 103 (La.1988); State v. Johnson, 532 So.2d 102 (La.1988); and State v. Gotro, supra. Therefore, by analogy, this result should be the same under any section of La.R.S. 44:3, including Subpart (A)(4)(c).
The present state of the law requires disclosure of an initial offense report unless the state can identify an exception under the law not allowing public access. We hold that such an exception, allowing the State to withhold any information in an initial offense report, exists when the initial offense report would reveal ongoing criminal undercover or intelligence operations; however, even where such information might ordinarily be excludable under this exception, if the defendant already knows the allegedly sensitive information, the exception should not bar disclosure.
When the state attempts to deny access to information in an initial offense report based upon the provisions of La.R.S. 44:3, a contradictory hearing should be held to determine whether any of the statutory exceptions against disclosure apply. La. R.S. 44:3(C); State v. McEwen, supra. If any exception applies, then that information must be withheld and the remainder of the report disclosed. Under no circumstances can the trial court accept the prosecutor's mere assertion of an exception under La.R.S. 44:3 but a contradictory hearing must be held. Cormier v. DiGiulio, supra; Conella v. Johnson, 345 So.2d 498 (La.1977).
*1044 In the instant case, the trial judge allowed the State the opportunity to demonstrate, at a contradictory hearing, why the information in the initial offense report was exempt from disclosure. The State relied on the contention that information in the report would reveal undercover or intelligence operations and, as such, is forever statutorily exempt from discovery or disclosure. The trial judge, after an in-camera inspection of the report, was not satisfied that disclosure of the information contained in the initial offense report would compromise an ongoing criminal investigation or reveal the identity of a confidential informant or an undercover police officer.
The record supports the decision of the trial judge and his analysis of the law in reaching that decision. The decision of the trial court, ordering disclosure of the initial offense report, after conducting an in-camera inspection of the report and finding it contained no information of an ongoing criminal investigation or revealed the identity of a confidential informant or undercover police officer, is affirmed.
For the foregoing reasons, the writ is denied and the matter is remanded to the trial court for further proceedings.
WRIT DENIED.
DOMENGEAUX, C.J., and STOKER and KNOLL, JJ., dissent and assign reasons.
DOMENGEAUX, Chief Judge, dissenting.
The majority opinion is based upon a rule of statutory construction that is not applicable to this case. Resorting to a liberal interpretation of the public records law is proper only where there is some doubt as to legislative intent. The courts are bound to apply an unambiguous statute as it is written.
In State v. Huntley, 526 So.2d 1313 (La. App. 3rd Cir.1988), the word "ongoing" was used only as a general description of narcotics operations. That case was not concerned with information which would reveal undercover or intelligence operations under La.R.S. 44:3(A)(4)(c), the statute we must apply today. Rather, the defendant in Huntley sought the identity of undercover police officers, which is prohibited by La.R.S. 44:3(A)(5). The majority has extracted this one word from a case unrelated to the narrow issue we decide today and has, in effect, inserted it into a plainly written statute. I submit this "cut and paste" approach, under the guise of liberal construction, is unnecessary, as the statute in question is subject to only one interpretation. La.R.S. 44:3(A)(4)(c) clearly provides:
Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations.
The statute makes no distinction between those police operations which have been concluded or which are current, and neither should we.
For these reasons and those assigned by STOKER and KNOLL, JJ., I respectfully dissent.
STOKER, Judge, dissenting.
I respectfully dissent from the majority holding in this case. LSA-R.S. 44:3A(4)(a) makes it clear that initial offense reports must be disclosed to criminal defendants. However, LSA-R.S. 44:3A(4)(c) makes it just as clear that the statute "shall not be construed to require the disclosure of information which would reveal undercover or intelligence operations."
The majority violates this legislative injunction by interpreting the injunction to apply to ongoing investigative operations only. There is no justification for engaging in interpretation. The statute is not vague or ambiguous. The only justification for such interpretation is to judicially impose a restriction on the legislative injunction although the statute contains none. The majority admits that the statutory language does not contain the word "ongoing." The majority asserts that the Legislature surely did not mean that records revealing undercover or intelligence operations should be forever sealed and never be open to the public. Why not?
*1045 The majority also suggests that the Legislature "could have couched its intent, that of barring discovery of a broad category of documents, in much clearer and much more direct language." How could the injunction be made more clear or direct? The majority suggests that the Legislature should have included in the statutory language the words "whether ongoing or not." Why should this be the case? When a legislative enactment is clear and positive, must the Legislature anticipate every possible resistance to the plain meaning of the enactment and add a series of injunctions saying, in effect, that what we have said does not mean this or does not mean that. The statutory language should be applied as it reads. If the Legislature should decide that its language is too restrictive, it is up to it to change it, not us.
In addition to the foregoing reasons, I subscribe to the reasons assigned by DOMENGEAUX, C.J., and KNOLL, J. in their dissenting opinions.
KNOLL, Judge, dissenting.
For the following reasons I respectfully dissent.
The majority's opening paragraph is misleading. The "only issue" presented is not "whether a defendant is entitled to an initial offense report concerning his arrest and pending criminal charges where production and disclosure of the initial offense report would not reveal the identity of any confidential informant or undercover police officer or any information about ongoing undercover criminal operations." as stated by the majority. The real issue presented before us is whether we will insert the word "ongoing" in a clear and unambiguous statute duly enacted by the legislature, namely, LSA-44:3 A(4)(c), which specifically states: "Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations." (Emphasis added.)
It cannot and should not be overlooked that initial offense reports in undercover and intelligence operations differ greatly from other initial offense reports that do not concern undercover or intelligence operations. Whether undercover or intelligence operations are conducted over a long period of time or a short period of time is of no moment as to the discoverability of the initial offense report. The information contained in these sensitive reports affect not only the lives and safety of the undercover agent(s) and confidential informant(s), but also reflect "security procedures, investigative training information or aids, investigative techniques, investigative technical equipment of instructions on the use thereof, of internal security information", which is also specifically excluded from disclosure. LSA-R.S. 44:3 A(3).[1] While I recognize that our Supreme Court *1046 has interpreted LSA-R.S. 44:3 broadly in the interest of the public records doctrine, it has not violated the statute by allowing the release of information specifically excluded by the statute, which the majority does by inserting the word "ongoing" in its interpretation of the statute. Whether the undercover or intelligence operation is "ongoing" is immaterial. LSA-R.S. 44:3 A(4)(c) cannot be stated clearerthe initial offense report is not subject to discovery.
The majority relies upon State v. Huntley, 526 So.2d 1313 (La.App. 3rd Cir.1988) in support of inserting "ongoing" in its interpretation of LSA-R.S. 44:3 A(4)(c). This dissenter was the author of Huntley and the word "ongoing" was employed in the Huntley opinion because the investigation which disclosed Huntley's criminal activity was still "ongoing" when he requested the initial offense report. The narrow issue of disclosure of the initial offense report when the undercover or intelligence operation is or is not "ongoing" was not presented in Huntley.
The majority further relies upon the "latest pronouncement by the Louisiana Supreme Court involving this issue ... Cormier v. DiGiulio, 553 So.2d 806 (La. 1989)...." Cormier does not support the majority view. First, Cormier does not concern undercover or intelligence operations. Secondly, the issue in Cormier does not concern whether the investigation is or is not "ongoing". Thirdly, Cormier pertained to alleged police misconduct. The request for the initial offense report was opposed on the grounds of pending criminal litigation under LSA-R.S. 44:3(A)(1). The word "ongoing" is not mentioned in Cormier nor implied.
Likewise, the majority's reliance upon State v. McEwen,[2] 504 So.2d 817 (La.1987) is not supportive of its view. In McEwen, the name of the undercover agent had been revealed to the defendant, whereas in the case sub judice the confidential informant's identity has not been revealed, as shown in the writ application:
"THE COURT: Now, C.I. Leo, has his identity been revealed to date?
MR. KIMBALL: No sir.
THE COURT: If we delete him from the offense report, what objection do you have?
MR. KIMBALL: It still would reveal the undercover operation and
THE COURT: Well, these are simple, isolated buys, there's no intelligence information.
MR. KIMBALL: It reveals how the undercover operation was going on."
*1047 Neither the majority's historical analysis nor its cited jurisprudence support its conclusion to change the law and find that LSA-R.S. 44:3 A(4)(c) is applicable only if the undercover or intelligence operations are "ongoing".
The respondent in the case sub judice is charged with two counts of distribution of cocaine. Narcotic prosecutions rank among the most dangerous prosecutions and even more so when a distributor is being prosecuted. There are many discovery tools available to defense counsels enabling them to obtain evidence and information in defending his/her client without the necessity of disclosing sensitive information contained in the initial offense reports of undercover or intelligence operations. There is a war on drugs going on, hence our legislature enacted a strong statute in support thereof by enacting LSA-R.S. 44:3 A(4)(c). Interpreting this statute to mean "ongoing" is being naive to the dangers of undercover or intelligence operations, as well as contrary to the statute. Likewise, in camera inspections by the trial court of these initial offense reports is unwarranted. Only in exceptional cases after an evidentiary hearing should the trial court be burdened with an in camera inspection.
I further dissent for the reasons assigned by Chief Judge DOMENGEAUX and Judge STOKER.
NOTES
[1] State v. Danny McGee, No. 89-7113 (Third Circuit, December 6, 1989), writ den., 556 So.2d 599 (La.1990); State v. Michael Barlow, No. 89-1187 (Third Circuit, January 8, 1990) (rehearing denied); State v. Gerald J. Foley, No. 89-1226 (Third Circuit, January 9, 1990) (rehearing denied); State v. David T. Albert, No. 89-1253 (Third Circuit, January 9, 1990) (rehearing denied), writ den., 561 So.2d 102 (La. 1990); State v. Michael Nelson, No. 89-1257 (Third Circuit, January 9, 1990) (rehearing denied), writ den., 561 So.2d 102 (La.1990); State v. Leroy Jasmine, No. 90-98 (Third Circuit, February 5, 1990); State v. Michael Lewis, No. 90-163 (Third Circuit, February 13, 1990).
[2] Supplemental offense report means, in the context of this opinion, a followup or subsequent report containing information known to the police at the time the initial report was prepared but which was selectively not included in the initial report and which is considered discoverable as part of the initial report. See, State v. McEwen, supra.
[3] See Footnote 1, concerning this Court's disposition of unreported writ applications.
[1] The statute in full provides:

A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, public health inspectors, or public health agencies, correctional agencies, or intelligence agencies of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
(3) Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information; or
(4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
(b) The initial report shall set forth:
(i) A narrative description of the alleged offense.
(ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vi) The vehicles involved.
(vii) The names of investigating officers.
(c) Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations.
(5) Records containing the identity of an undercover police officer or records which tend to reveal the identity of an undercover police officer; or
(6) Records concerning status offenders as defined in the Code of Juvenile Procedure; or
(7) Records containing the identity of a subject of a public health disease investigation or study or records which would tend to reveal the identity of such a subject.
B. All records, files, documents, and communications, and information contained therein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or departments mentioned in Paragraph A above, shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law. No officer or employee of any of the officers, agencies, or departments mentioned in Paragraph A above shall disclose said privileged information or produce said privileged records, files, documents, or communications, except on a court order as provided above or with the written consent of the chief officer of the agency or department where he is employed or in which he holds office, and to this end said officer or employee shall be immune from contempt of court and from any and all other criminal penalties for compliance with this paragraph.
C. Whenever the same is necessary, judicial determination pertaining to compliance with this section or with constitutional law shall be made after a contradictory hearing as provided by law. An appeal by the state or an officer, agency, or department thereof shall be suspensive.
D. Nothing in this section shall be construed to prevent any and all prosecutive, investigative, and law enforcement agencies from having among themselves a free flow of information for the purpose of achieving coordinated and effective criminal justice.
[2] The McEwen opinion was the result of a writ application from the Court of Appeal, Third Circuit, Number KW89-1113, Parish of Calcasieu, 14th Judicial District Court.