568 So.2d 190 (1990)
STATE of Louisiana, Appellee,
v.
Fred J. DAVIS, Appellant.
No. 21669-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
Writ Denied January 4, 1991.
*191 Hunter, Scott, Blue, Johnson & Ross by Louis G. Scott, Monroe, for appellant.
William J. Guste, Jr., Attorney Gen., William B. Faust, III, Asst. Atty. Gen., James A. Norris, Jr., Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Fred J. Davis, was convicted after a jury trial of distribution of cocaine, in violation of LSA-R.S. 40:967. He was sentenced to imprisonment at hard labor for seven years. From this conviction and sentence, he appeals. For the reasons set forth below, we affirm the conviction and sentence.

FACTS
On February 15, 1989, the Metro Narcotics Unit of the Monroe police department conducted an undercover narcotics investigation at Jackson's Bar in Monroe, Louisiana. According to Monroe law enforcement agents, this location was known to them as a site where large amounts of cocaine were sold. Detective Kelvin Murphy of the Metro Narcotics Unit, acting as an undercover agent, was sent to the bar to attempt to make a purchase of narcotics. In this capacity, he wore a Unitel body mike.
Detective Kirk Petterson was the case agent in charge of the investigation. He and Detective Hank Smith maintained audio *192 surveillance of Detective Murphy from their vehicle about one and a half blocks from the bar. Another surveillance team consisting of Detectives Jimmy Fried and Jerry Stansbury was stationed approximately two and a half blocks from the bar. Detective Fried was the surveillance officer in charge of making a recording of the transaction if the body mike transmitted a sufficiently clear signal. (On this occasion, it did not.)
At about 9 p.m., Detective Murphy drove up to Jackson's Bar. There he encountered a woman outside the bar and asked her who was "holding" (referring to drugs). She motioned to a black male, later identified as the defendant, who was wearing faded or stone-washed blue jeans, a gray jacket and a multi-colored baseball cap. The defendant approached Detective Murphy and asked what he wanted. The officer responded that he wanted two "rocks." The defendant then went into the bar and returned with two pieces of crack cocaine, for which Detective Murphy paid him $45 in prerecorded bills.
Detective Murphy then drove away. He met Detectives Fried and Stansbury at a predesignated spot a few blocks away from the bar. Detective Murphy gave them a description of the suspect who had sold the cocaine. Detective Fried radioed this description to Detective Petterson. These officers then went together in Detective Fried's car to meet Detectives Petterson and Smith. There Murphy transferred the cocaine to Petterson's custody.
After a brief interval, the officers, including Detective Murphy (who was still travelling in Detective Fried's car), returned to Jackson's Bar. Detectives Petterson, Smith, and Stansbury entered the establishment to locate the man described by Murphy. The defendant was the only person in the bar who matched the description. The officers asked him to accompany them outside.
Detective Murphy remained in Fried's car, which had tinted side and back windows. In order to conceal his identity (Detective Murphy was participating in an ongoing investigation that lasted three months), the headlights were put on bright setting, and the defendant was placed in front of the vehicle. From his position inside the car, Detective Murphy observed the defendant standing beneath the flour-escent lights outside the bar and in front of the headlights. Detective Murphy identified the defendant to Detective Fried as the person who had just sold the cocaine to him. The defendant was then arrested.
On March 23, 1989, the defendant was indicted on one count of distribution of cocaine. On April 12, 1989, the defendant filed a motion for discovery in which he sought, among other items, a copy of the initial police report. In its response, the state contended that the defendant was not entitled to the document, but nonetheless attached a copy of it. In a subsequent discovery motion, the defendant alleged that the state had provided him with a fake or dummy police report. On May 19, 1989, the state filed a supplemental response to defendant's request for a bill of particulars in which it disclosed the identity of Detective Murphy as the undercover police officer to whom the cocaine was sold.
On May 22, 1989, a hearing was held on several discovery issues. On the issue of the police report, the trial court denied the defendant's motion for "anything else in the nature of an initial police report." The trial court found that the defendant was not entitled to reports involving an undercover investigation.
The case against the defendant initially went to trial on May 24th and 25th, 1989. However, a mistrial was declared when the jury was unable to reach a verdict.
On June 7, 1989, defense counsel filed a motion to require the court reporter to furnish a transcript of the trial testimony of Detectives Fried and Murphy. Judge John R. Joyce denied the motion. On June 19, 1989, the defendant made another motion for the transcript before Judge Michael S. Ingram, who also denied the motion. However, Judge Ingram granted a request for production of the court reporter's tape recording.
On June 20, 1989, the day before the present trial was to begin, defense counsel *193 again moved to obtain the transcript, this time before the presiding judge, Judge John R. Harrison. The motion was denied. However, Judge Harrison ordered that the court reporter's tape be set up for defense counsel in the court reporter's office. The trial judge also specified that defense counsel would be allowed to recess court at any time during the trial to listen to the tape. If defense counsel determined that a portion was needed during the trial, the trial judge would order its immediate transcription. Defense counsel agreed to this procedure.
The second trial commenced on June 21, 1989. A guilty verdict was returned by the jury on June 23, 1989.
On August 10, 1989, the defendant appeared before the court for sentencing. Initially the court noted that it had little personal background on the defendant because of his refusal to cooperate with the probation officer who compiled the pre-sentence investigation (PSI) report. Defense counsel explained that the defendant had not realized it was appropriate for him to speak to someone other than his attorney. The court allowed the defendant to submit written background information into the record. After reviewing this additional information, the trial court imposed a sentence of seven years at hard labor.
The defendant appeals his conviction and sentence. He assigns as error the following: (1) the trial court erred in denying his motions to obtain the police reports; (2) the trial court erred in refusing to order a transcript to be made of the defendant's first trial; and (3) the trial court erred in imposing an excessive sentence.

POLICE REPORT
The defendant contends that the trial court erred in failing to order production of the initial police report. He alleges that the state responded to his motion for discovery by providing a fake or dummy report.
LSA-R.S. 44:3 provides, in pertinent parts:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, public health inspectors, or public health agencies, correctional agencies, or intelligence agencies of the state which records are:
* * * * * *
(4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be public record.
(b) The initial report shall set forth:
(i) A narrative description of the alleged offense.
(ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vi) The vehicles involved.
(vii) The names of investigating officers.
(c) Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations.

(5) Records containing the identity of an undercover police officer or records which would tend to reveal the identity of an undercover police officer; ... [emphasis ours]
*194 As clearly specified in the above statute, an initial police report is subject to discovery. State v. Shropshire, 471 So.2d 707 (La.1985). Also, the reporting officer may not selectively include information in the initial report, and place the remainder in a subsequent report in order to defeat the purpose of the statute. State v. McEwen, 504 So.2d 817 (La.1987); State v. Sanders, 539 So.2d 114 (La.App. 2d Cir.1989), writ denied 546 So.2d 1212 (La.1989).
Police reports involving undercover personnel are generally not discoverable. In State v. Huntley, 526 So.2d 1313 (La.App. 3rd Cir.1988), the defendant complained that the "initial offense report" which was furnished to him did not include all information obtained in the initial investigation of the complaint. Consequently, the defendant sought access to the supplemental investigation report. The court held that under LSA-R.S. 44:3(A)(5), public disclosure of such a supplemental report was not mandated when such disclosure would reveal the identity of undercover narcotics personnel.
The court stated:
An undercover narcotics operation would contain almost exclusively the undercover officer's statements since it does not have victims per se as in most crimes, and there generally are no witness interviews. It is also by nature an ongoing operation, markedly different from those criminal investigations which arise as the result of a complaint made to elicit police intervention. Accordingly, we find it extremely important that when the legislature added R.S. 44:3A(4) in 1984 it limited public accessibility to reports of the officer or officers investigating a complaint, and did not amend the earlier exclusion provided by R.S. 44:3A(5) which excluded the disclosure of the identity of undercover police officers. Therefore we find that in the present case Shropshire and McEwen do not mandate disclosure of the supplemental report as a public record since it would reveal records containing the identity of undercover police personnel who were involved in a narcotics investigation.[1]
526 So.2d at 1316
However, once the identity of an undercover officer has been disclosed in response to other discovery motions, "an initial offense report" revealing that same information cannot be withheld on the basis of LSA-R.S. 44:3(A)(5) because the privilege no longer serves its underlying purpose. State v. Gotro, 532 So.2d 102 (La. 1988), rehearing denied 533 So.2d 6 (La. 1988). In Gotro (and three other cases consolidated with it), the Supreme Court held that the statute required disclosure to the defendant of any initial reports by investigating officers whose identity had already been revealed.
In the present case, the defendant first sought the initial police report in a pre-trial discovery motion. The state answered this request by denying that the report was a public record because it involved an undercover investigation and was not the result of an investigation of a "complaint." However, the state, in a spirit of cooperation, furnished the defendant with a copy of a one-page document entitled "OFFENSE REPORTINITIAL REPORT." This document gives the name of the case agent, the date and location of the offense, the defendant's name, date of birth, race, sex, address and the charge against him. The summary states: "Suspect arrested after a short investigation at Jacksons bar."
Subsequently, the defendant filed a motion to compel the state to file a bill of particulars and to compel discovery. In his *195 motion, the defendant asserted that he had been given a fake or dummy report instead of the actual report. On May 19, 1989, the state filed a supplemental answer to the defendant's application for a bill of particulars in which it disclosed the identity of Detective Murphy. On May 22, 1989, the trial court denied the defendant's motion to obtain "anything else in the nature of an initial police report."
Examination of the initial report supplied to the defendant reveals that it provides minimal information about the offense. However, we also observe that the defendant's arrest occurred early in Detective Murphy's three-month undercover investigation. Officer Petterson's caution in placing a minimum of information in this initial report, arguably a public record, is understandable. Certainly, disclosure of additional information in this report could have endangered Detective Murphy's safety and jeopardized his ongoing investigation. Therefore, we conclude that the trial court did not err in refusing to order the state to furnish additional police reports. State v. Huntley, supra.
However, even assuming arguendo that the defendant was denied access to police reports to which he was entitled, the failure of the state to comply with discovery does not automatically mandate reversal of the defendant's conviction. The court must review the record to determine whether any prejudice may have resulted from the noncompliance which caused the trier of fact to reach the wrong conclusion. State v. Sanders, supra.
The defendant has neither alleged, nor do we detect, any prejudice in this regard. In particular, the record demonstrates that the defense obviously had access to an undercover surveillance report executed by Detective Petterson. That document (which was admitted as a joint exhibit) was more detailed than the initial report. It included the suspect's clothing description as recounted to Detective Petterson, the precise time of the offense, the amount of cocaine purchased and the price paid, plus information pertaining to police surveillance of the transaction. Defense counsel used this document to thoroughly cross-examine various police officers. Therefore, it is clear that the defendant suffered no prejudice.
Based on the foregoing, we find no merit in this assignment of error.

TRANSCRIPT OF MISTRIAL
The defendant asserts that the trial court erred in refusing to order that a transcript be made of his earlier mistrial. He contends that this refusal clearly hampered defense counsel in his efforts to prepare his case. He further asserts that under United States v. Pulido, 879 F.2d 1255 (5th Cir.1989), he is not required to show prejudice.
The state must provide an indigent defendant with a transcript of prior proceedings when needed for an effective defense. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). Two factors relevant to the determination of need are: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. The court in Britt noted that the jurisprudence had consistently recognized the value of the transcript without requiring a showing of particularized need. Britt, 92 S.Ct. at 434.
The defendant relies upon Pulido for the principle that he is not required to show prejudice in order to obtain relief. However, the Fifth Circuit merely concluded in Pulido that a harmless error analysis was not appropriate in that case. The court specifically observed that "we do not reach here the question of whether it is ever appropriate."
An examination of the facts in Pulido reveals that the defendant's first trial ended in mistrial. Several days later the defendant requested a transcript of the trial, which request was denied by the trial court. There was a two-month delay between the defendant's first and second trials. At the second trial, he was represented by different counsel. Although the attorney *196 at the second trial had been co-counsel at the first trial, he had not been present for the entire proceeding. Furthermore, the court in Pulido noted that the state had not opposed the defendant's request for a transcript.
In the present case, the defendant was represented by the same attorney throughout all proceedings. A mistrial was declared on May 25, 1989. Thereafter, the defendant made three separate requests for a trial transcript of the testimony of Detectives Fried and Murphy. Each time the trial court denied the request.[2]
However, after the defendant's third request, made the day before trial, the trial judge consulted with the court reporter and determined that the testimony could not be transcribed by the next day because of a lack of available personnel. The court denied the motion at that point, but made extensive alternative arrangements. It ordered that the court reporter's tape be set up in the court reporter's office for defense counsel to listen to before the commencement of trial. The court stated that defense counsel would be allowed to obtain a recess at any time during trial to listen to the tape again. If it was determined that a portion was needed during trial, the court would order it to be "transcribed on the spot." Defense counsel agreed to this procedure.
The record further demonstrates that defense counsel utilized these alternative procedures. He listened to the tape before trial commenced. When cross-examining Detective Murphy about his description of the person who sold the cocaine, defense counsel determined what he believed to be a discrepancy. At the second trial, Murphy referred to the suspect wearing "faded" jeans whereas he had also described them as "stone-washed" at other times. Defense counsel wished to determine whether Murphy had ever referred to the jeans as "faded" at the first trial.
The trial court promptly recessed the trial and allowed the attorneys to listen to the tape. It was determined that at the first trial Murphy had made one reference to the jeans as being "faded." This reference was immediately transcribed, and the trial continued.
As noted by the courts in Britt, Pulido, and Tague v. Puckett, 874 F.2d 1013 (5th Cir.1989), strict standards for transcript alternatives have been established. In most cases, furnishing of the actual transcript will be required. However, after much careful consideration, we have determined that under the specific circumstances of the present case, the defendant had an adequate alternative to the transcript. Furthermore, we observe that the two trials were separated by less than four weeks. Although the defendant made his first transcript request almost two weeks after the first trial, he did not seek any review of the denial of that motion. Despite the defendant's present allegations that the transcript of the officers' testimony was vital to his case, he waited almost two more weeks, and, on the eve of trial, renewed his request. The trial judge was clearly willing to order the testimony transcribed had time permitted. However, the defendant made no motion for a continuance due to the absence of the transcript.
Under the circumstances presented in this case, and particularly in light of the alternatives to a transcript which were made available to defense counsel, we find no merit in this assignment of error.

EXCESSIVE SENTENCE
The defendant argues that the sentence of seven years at hard labor imposed by the trial court was unconstitutionally excessive. In particular he contends that the trial court was in error as to his prior criminal history and that the record did not support the trial court's conclusion that the defendant was likely to commit another crime. He also contends that the trial court gave inadequate consideration to *197 such mitigating factors as hardship to his family.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const.1974, Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is sodisproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La. 1984).
When imposing sentence, the trial court considered numerous factors. It reviewed the personal history of the thirty-five-year-old, unmarried defendant. The defendant dropped out of high school in the 11th grade (supposedly because law enforcement officers were following him.) His work history included employment at the Holiday Inn Holidome at the time of his arrest. The court found that the defendant's disabled mother would suffer hardship because of the defendant's incarceration. However, the trial court also found that the defendant was not a youthful offender and that he was not repentant for his criminal activity.
The trial court also examined the defendant's prior criminal record. The PSI report stated that the defendant was convicted of indecent behavior with a juvenile in 1973. In 1978, he was charged with possession of marijuana and improper display of license plates. He pled guilty to the latter charge and to attempted possession of marijuana. He was convicted of fighting in 1986, and of DWI in 1987. Subsequently, he was charged with various traffic offenses, such as driving under revocation, but most of these charges were dismissed.
The trial court found that the defendant's record indicated that the defendant had a lax attitude towards drugs and that he was not a good candidate for probation. The court found that there was undue risk of the defendant committing another crime while on probation.
The defendant takes issue with these findings of the court. Specifically, he argues that the trial court based its conclusions on the erroneous information that he was convicted in 1973 of indecent behavior with a juvenile when he was instead convicted of attempted indecent behavior with a juvenile. In support of this argument (which he raises for the first time on appeal), he attached a copy of the jury verdict in that case.
*198 An appellate court has no authority to receive or review evidence not contained in the trial court record. State v. Smith, 447 So.2d 565 (La.App. 1st Cir. 1984); State v. Dean, 528 So.2d 679 (La. App. 2d Cir.1988). Also, a claim contesting the accuracy of the PSI must be raised before sentencing, not on appeal. The lack of a contemporaneous objection and ruling thereon leaves nothing in the official record to substantiate the claim. State v. Bryant, 514 So.2d 716 (La.App. 2d Cir.1987), motion to dismiss granted 521 So.2d 1180 (La. 1988). In the present case, the defendant made no contemporaneous objection to the information in the PSI.
Nevertheless, we have considered the defendant's claim of error. We note that during the sentencing hearing, defense counsel stated that the defendant was under the impression that the 1972 offense was a misdemeanor. The defendant did not dispute the specific charge. The trial court re-examined the PSI, which stated that the offense was indecent behavior with a juvenile. Furthermore, even if the offense was attempted indecent behavior with a juvenile, it is still a felony. [See LSA-R.S. 14:2(4) and the history and source of law provisions under R.S. 14:81.] The defendant concedes as much in his brief. Under the circumstances presented, we find that the defendant was not prejudiced by this error in the PSI.
The defendant's general criminal record supports the trial court's concerns as to the defendant's ability to lead a law-abiding life. He has been convicted on several occasions for a variety of offenses which range from sexual misconduct to drugs. We see no abuse in the trial court's conclusions that the defendant was likely to commit other crimes and that he needed correctional treatment.
In imposing sentence, the trial court gave appropriate weight to the mitigating factors, such as the potential hardship to the defendant's mother. We note that the defendant faced a sentencing exposure of between five and thirty years at hard labor, plus a possible maximum fine of $15,000, for the present offense. Thus, his sentence of seven years, which is only two years more than the statutory minimum, falls in the lower range of potential sentences.
Based on the foregoing, we find that the trial court did not err in the imposition of this seven year hard labor sentence. This assignment of error is without merit.

CONCLUSION
The conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] In State v. Simon, 544 So.2d 610 (La.App. 3rd Cir.1989), writ denied 550 So.2d 647 (La.1989), the Third Circuit relied in part upon Huntley. In Simon, the court upheld a trial court's refusal to grant a request at trial to obtain an initial police report. The court found that the motion, which was made during trial, was untimely and would have required production of information relating to undercover operations. In Simon and Huntley, the court relied upon the distinction between a "complaint" made by the public and a police investigation. However, see Cormier v. Public Records Request of DiGiulio, 553 So.2d 806 (La.1989), in which the Supreme Court discounted such a distinction. Nevertheless, the general principle that reports of undercover investigations are privileged remains viable.
[2] Each of these three requests was made before a different judge. The final request was before the judge who presided over the second trial.