430 So.2d 650 (1983)
STATE of Louisiana
v.
Joe Buddy OLIVER.
No. 82-KA-0540.
Supreme Court of Louisiana.
April 4, 1983.
Dissenting Opinion May 9, 1983.
Rehearing Denied May 13, 1983.
*651 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Julie Cullen, Patrick Quinlan, Asst. Atty. Gen., for plaintiff-appellee.
N. Graves Thomas, Wellborn Jack, Jr., Jack, Jack, Carey & Carey, Shreveport, for defendant-appellant.
MARCUS, Justice.
Joe Buddy Oliver was indicted by the grand jury for the first degree murder of Robert Earl Nix and Billy Joe Gordon on January 17, 1978, in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. After a sentencing hearing, the jury was unable to unanimously agree on a recommendation; therefore, the court imposed a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. On appeal, finding reversible error, we reversed defendant's conviction and sentence and remanded the case to the trial court for a new trial.[1] On remand, the indictment was amended to charge defendant with second degree murder in violation of La. R.S. 14:30.1. After commencement of trial but before selection of the jury panel, a mistrial was ordered. The case was reset for trial. After another trial by jury, defendant was found guilty of second degree murder and sentenced to imprisonment for life, not to be eligible for parole, probation, or suspension of sentence for a period of *652 forty years.[2] On appeal, defendant relies on ten assignments of error for reversal of his conviction and sentence.

FACTS
Bobby Nix and Billy Gordan were murdered on January 17, 1978. Earlier that day they had arrived at an apartment occupied by Robert Roy Spearman and defendant. Nix was asked to drive defendant to his parents' home to pick up a stereo which defendant was going to leave in the possession of Spearman. After picking up the stereo, the foursome left defendant's parents' home. On the return trip, both Gordan and Nix were shot at close range by the occupant of the rear seat. The car was then driven to an isolated area and Nix was strangled with a tie, stabbed with a knife and then again shot in the head. Both Spearman and defendant were arrested and subsequently indicted for first degree murder. Thereafter, Spearman pled guilty to second degree murder and was sentenced to life imprisonment. At defendant's first trial, Spearman testified that he had been riding in the front seat of the car and that it was defendant who occupied the back seat of the car and shot the victims. He further testified that defendant climbed into the front seat and drove the automobile down a dirt road where defendant pulled the bodies out of the car and strangled, stabbed, and shot Nix. He denied having taken any part in the commission of these acts. At defendant's later trial, Spearman refused to testify and his testimony from the first trial was read into the record.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in limiting discovery prior to trial. Specifically, he argues that he should have been permitted to discover the identity of a confidential informant. He further contends the trial judge erred in refusing to grant all the relief he requested in his various motions to produce evidence favorable to him.
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This court has consistently held that a confidential informant's identity will be divulged only under exceptional circumstances. State v. Babbitt, 363 So.2d 690 (La. 1978); State v. Robinson, 342 So.2d 183 (La.1977). The general rule is that the burden is upon the defendant to demonstrate exceptional circumstances and much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure. State v. Babbitt, supra; State v. Robinson, supra.
Unlike Roviaro, no evidence was presented in the instant case that the informant set up and participated in the crime as an aid to law enforcement officers. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972), we determined that only when the evidence shows that the informant, in cooperation with the police, participated in the crime should the identity be disclosed to defendant. In such cases, the informant does more than furnish a tip that enables the police to make an arrest or search. While working with the police, he takes part in the illegal transaction itself. See Roviaro v. United States, supra; State v. Dotson, supra.
In the instant case, the informant, Gary Bevers, did not participate in the crime in any manner. Moreover, defendant failed to demonstrate exceptional circumstances which would warrant disclosure. Defendant moved for disclosure of the informant's identity on the ground that both Spearman and defendant were presently incarcerated *653 and there was no need to worry about the informant's safety. Thereafter, he argued that the informant's testimony would be material and relevant in that it provided a motive for Spearman to have committed the crime and was thus exculpatory to him.
Defendant first learned of the existence of the confidential informant at a hearing on a motion to suppress a statement he had given to the police. At this hearing the investigating officer, Edward Allen, testified that he had spoken with a confidential informant and had learned that Nix and Spearman were not close friends and that Spearman owed Nix three or four hundred dollars. In addition, Allen disclosed that the informant related that on the day of the murders, Nix and Gordon were at the informant's house and that Nix wanted to borrow a gun. Nix further stated that he was going to have to lean on Spearman to collect his money, but that he was afraid to go there because he knew that defendant was with Spearman, and that defendant carried a .22 caliber revolver. The informant, Gary Bevers, was not located by the state until immediately prior to trial and was called as a state witness.
Contrary to defendant's contentions, our review of Bevers' brief testimony at trial does not reveal any information favorable to defendant that he did not already possess prior to trial. Hence, we conclude that the trial judge did not abuse his discretion in refusing to order the state to disclose the identity of the confidential informant.
The thrust of defendant's efforts at discovery of evidence favorable to him was to discover the information in the possession of the state which formed the factual basis of Spearman's plea of guilty to the murders. Defendant argued before the trial court that any information which inculpated Spearman was necessarily exculpatory to him. This argument is without substance.
It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). There is, however, no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of any or all police investigatory work on a case. United States v. Agurs, supra; Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). We have consistently held that the state is not required to open its files to the accused and allow him to search them and decide what is exculpatory. State v. Robinson, 342 So.2d 183 (La.1977); State v. Johnson, 324 So.2d 349 (La.1975). Nor is defendant entitled to an in camera inspection by the court where the state denies possession of the specific information requested and defendant makes no showing to contradict the state's answer. State v. Robinson, supra.
In the instant case, our review of the record reveals that the trial judge conducted in camera inspections upon a showing by defendant that specific information existed. On the other hand, where defendant made a general request or where the state denied possession of specific information and defendant failed to make a contrary showing that such existed, the trial judge properly refused to make an in camera inspection. Hence, the trial judge did not err in failing to grant defendant all the relief requested in his motions to produce.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial court erred in refusing to make a reviewable record of all documents examined by him in camera. He does not argue how he was prejudiced by this refusal.
During the course of several hearings on discovery motions, defendant requested that the trial judge review several statements made in connection with the investigation of the crime to determine whether these statements included information favorable to him. The trial judge at defendant's *654 second trial which ended in a mistrial examined two of these statements and determined that they contained no exculpatory information. Defendant requested that the trial judge seal the documents and make them part of the record and the trial judge refused. Prior to commencement of the third trial, defendant again requested that the trial judge seal all documents that he had examined or that had been previously examined in camera and make them part of the record. The trial judge noted defendant's request, took it under advisement, but never ruled on it.
In the first place, it is doubtful whether defendant was entitled to an in camera inspection by the court. However, assuming that he was, we agree with defendant that the trial judge should have made a reviewable record of all documents that he examined in camera. Nonetheless, we do not find that his failure to do so constituted reversible error. The trial judge had previously noted after examination in camera of the documents in question that they contained no exculpatory information.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in allowing the state to use the prior recorded testimony of Robert Roy Spearman. He argues that the use of this testimony deprived him of his constitutionally protected rights to confrontation and cross-examination.
Robert Roy Spearman who had testified as a state's witness at defendant's first trial was called as a witness for the state in this trial. Spearman had previously pled guilty to the second degree murder of Nix and Gordon and was then serving a sentence of life imprisonment. He steadfastly refused to testify. The state asked to have him held in contempt of court and sought to introduce the transcript of his testimony at the prior trial on the ground that Spearman was "unavailable" as a witness in this trial. Spearman was found in contempt of court and sentence was delayed pending the end of the trial. The Court ruled that his prior trial testimony was admissible and the transcript was read to the jury.
It is well settled, that before testimony given at a prior hearing or trial may be introduced in evidence at a subsequent trial, without offending the confrontation and cross examination clauses of the federal and state constitutions, certain conditions must be met: (1) defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of the trial, the witness (whether out of state or not) is unavailable or unable to testify; and (5) the state has made a good faith diligent effort to obtain the presence of the witness, including its out-of-state subpoena power where appropriate. State v. Hills, 379 So.2d 740 (La.1980), and cases cited therein. In State v. Ghoram, 328 So.2d 91 (La.1976), this court held that a witness who refused to testify and was found to be in contempt of court for such refusal was "unavailable" and that his prior recorded testimony was admissible at the second trial.
In the instant case, defendant was represented by counsel at the first trial; Spearman testified under oath; the right of cross-examination was exercised at the earlier trial; Spearman was unavailable; and the state made a good faith effort to have Spearman testify. Consequently, defendant's rights of confrontation and cross-examination were not violated. Hence, we find no error in the trial judge's ruling allowing introduction of Spearman's prior trial testimony.
Assignment of Error No. 5 is without merit.
We find that none of the remaining assignments of error present reversible error, nor do any involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case.

*655 DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Although the trial judge commendably and properly conducted an in camera inspection of the statements, the judge erred in refusing to include the statements in the record for appellate review. Because we have no method of reviewing the trial judge's evaluation that the submitted material contained no exculpatory evidence, I would remand for inclusion of the statements so that defendant can receive the "judicial review based upon a complete record" to which he is entitled under La. Const. Art. I, § 19 (1974).[1] See State v. Davenport, 399 So.2d 201 (La.1981), aff'd. on appeal after remand, 422 So.2d 1150 (La.1982).
NOTES
[1] 387 So.2d 1154 (La.1980).
[2] At the time of the commission of this crime (January 17, 1978), La.R.S. 14:30.1 provided in pertinent part: "Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation, or suspension of sentence for a period of forty years."
[1] The omitted information may help solve another difficult problem. If exculpatory material was withheld before the first trial, and if that material would have been crucial to defendant's cross-examination (and hence, his "confrontation") of Spearman during the first trial, then the Sixth Amendment and fundamental fairness arguably might require the exclusion of the transcript of Spearman's first trial testimony which, because of his "unavailability", was otherwise admissible in the second trial.