544 So.2d 610 (1989)
STATE of Louisiana
v.
Antoinette Sheila SIMON.
No. CR88-712.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*611 Emile A. Carmouche, Crowley, for defendant.
Robin Rhodes, Asst. Dist. Atty., Lafayette, for plaintiff.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
The defendant, Antoinette Sheila Simon, was charged by Bill of Information with two counts of possession of cocaine with intent to distribute, violations of LSA-R.S. 40:967. After a trial by jury, the defendant was found guilty as charged on the first count, which occurred on December 10, 1986, and not guilty on the second count, which occurred on December 15, 1986. The defendant was sentenced to serve seven years at hard labor with the Department of Corrections. The defendant has appealed her conviction and designated 13 assignments of error. Six of those assignments of error have been expressly abandoned by the defendant and are not considered in this appeal.

FACTS
A confidential informant arranged for the defendant and Det. Jim Miller, of the Lafayette Parish Sheriff's Department, to meet at the Red Top Lounge in Lafayette for a drug transaction. The informant accompanied Det. Miller to the lounge where the defendant was waiting at the door for their arrival. The informant left the vehicle, approached the defendant and pointed out Det. Miller. The defendant joined Det. Miller in his vehicle, at which time she asked Miller "what he wanted." Miller told defendant that he wanted to purchase an "eight ball." An "eight ball" is a slang term for one-eighth of an ounce of cocaine. The defendant then took seven zip-loc bags containing a white powdery substance from the pocket of her jeans. Miller examined the bags and gave the defendant $300 in cash for the cocaine. The defendant got out of the vehicle, Miller picked up the informant and they departed from the lounge. Miller took the bags back to the Sheriff's Department where he packaged them in a brown evidence envelope and prepared the necessary paperwork to accompany it. The envelope was then placed in a locked cabinet in the narcotics section of the Sheriff's Department. Miller testified at trial that he did not handle the evidence after placing it in the cabinet.
On December 15, 1986 Det. Miller was told by the same informant that the defendant was inquiring as to whether or not Miller wished to purchase more cocaine. Miller had the informant set up a meeting for another purchase. Defendant did not want to meet at the Red Top Lounge again, so a meeting was arranged to take place at the oak tree in the parking lot of the Independence Plaza Shopping Center in Scott. This location was midway between defendant's trailer in Duson and the Red Top in Lafayette.
Miller testified that he and the informant arrived at the parking lot and waited several minutes. When the defendant arrived, the informant left Miller's vehicle and departed from the scene. It was raining very heavily that night, so the transaction was done from their vehicles through the windows. Defendant handed Miller seven zip-loc bags, he checked them, then handed her $300 in cash. Miller watched defendant leave going toward Lafayette. Miller then picked up the informant at another location. Miller went back to the Sheriff's Department, packaged the cocaine, did the necessary paperwork and again locked it in the cabinet in the narcotics department.

*612 I.

(Defendant's Assignment of Error No. 1)
By this assignment of error, defendant asserts that the trial court erred in declining to sustain defendant's motion for a mistrial based upon the remarks in the State's opening statement which, in substance, anticipated that the defendant would plead entrapment as a defense and that the State would counter this defense by producing evidence of other crimes to show defendant's predisposition to commit the crimes for which she was charged.
The specific statements made by the State which defendant objected to are as follows:
"After this introduction, then the undercover narcotics detective who is unknown by the suspect is then able in some cases to set a trap for the suspect or to furnish the suspect with an opportunity to distribute illegal drugs which that suspect is already predisposed or ready, willing, and able to do."
* * * * * *
"On December 10th, 1986, the defendant, Antoinette Shelia Simon, already predisposed and ready, willing, and able to distribute cocaine was given the opportunity to do so to an undercover narcotics officer unknown to her as an undercover narcotics officer. On that date the defendant indicated that she was ready, willing, and able to distribute cocaine. Detective Jim Miller of the Lafayette Parish Sheriff's Office operating in an undercover capacity in the narcotics division of the Sheriff's Office was introduced to the defendant for that purpose."
* * * * * *
"In this case the State is going to show you by piecing those puzzle pieces that it is a clear picture that the defendant did indeed distribute cocaine to an undercover narcotics detective without any inducement from him. She ready, willing, and able to distribute that substance to the detective on two occasions."
* * * * * *
"The evidence that the State must present to you must be free of any evidence of entrapment. As I suggested to you earlier in my preface or prefactory of the beginning part of my comments in the opening statement, this defendant in this case was predisposed
MR. CARMOUCHE: Your Honor, may I approach the bench with counsel?
THE COURT: Yes, sir.
(BENCH CONFERENCE)
THE COURT: You object to the argument opening statement made by the State. The Court overrules your objection. We can do it later after the jury is not present in the courtroom.
THE COURT: You can continue.
MR. STUTES: Thank you, Judge. As I suggested to you earlier, and I'm not telling you anything new at this point, defendant was ready, willing, and able to distribute cocaine on two occasions to the defendantto the detective without any inducement or any encouragement or without any wrong conduct on the part of the detective. The detective merely gave the defendant two opportunities to do exactly what she was ready, willing, and able to do and that's distribute cocaine."
Defendant's argument is that this should have constituted grounds for a mistrial under LSA-C.Cr.P. art. 770(2) because any evidence reflecting adversely upon a defendant's character is highly prejudicial and therefore inadmissible unless the defendant has first made his character an issue. Defendant argues that State v. Coleman, 499 So.2d 408 (La.App. 4th Cir.1986) and State v. Batiste, 363 So.2d 639 (La.1978) require that a mistrial be granted. In Coleman, the State made a direct reference in its opening statement to defendant's prior criminal record, which qualifies as an indirect reference to other crimes. In Batiste, the testimony elicited during examination of the State's chief witness showed that defendant had previously participated in arranging a drug sale. We do not find either of these cases to be controlling.
*613 It is clear from the transcript that the State at no time in its opening statement made a direct reference to defendant's prior criminal record while in the presence of the jury. The State did file a "Notice of Intent to Use Evidence of Other Crimes," but no evidence of other crimes having been committed by the defendant was presented by the State during any stage of the trial.
We do not believe that the statements made by the State concerning defendant's "predisposition" to commit this crime impermissibly suggest that defendant has committed other crimes. Since no evidence of other crimes was ever presented by the State, the issue of defendant's character never came into question. This argument is without merit.

II.

(Defendant's Assignment of Error No. 12)
By this assignment of error, defendant questions the legality of the verdict of guilty rendered on Count 1 when the jury found defendant not guilty of Count 2. The defendant argues that "the verdict rendered, when considered in light of the facts and circumstances above enumerated, is irreconcilable with honesty, realism and rationality, is contrary to the law and facts, and is also void of legal justification that it amounts to a rejection of the basic concepts which are the very essence of the orderly, impartial and realistic justice which constitutes due processguarantees to every person under the pertinent jurisprudence in our state and the provisions of our National and State Constitutions." The defendant specifically argues that Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), requires that her conviction on the first count be overturned because she was not found guilty on the second count.
In Ashe v. Swenson, the defendant was accused of having robbed six participants in a card game. The cardplayers were robbed simultaneously of cash and various items of personal property by three or four masked men. Defendant was first tried on the charge of robbing only one of the six participants. The State presented that victim and three of the other cardplayers as witnesses. Their testimony was weak as to the identity of defendant as one of the robbers. The jury found the defendant not guilty. Later, defendant was brought to trial again, this time for the robbery of another of the cardplayers. The State produced the same witnesses, who this time testified very strongly as to defendant's identity as one of the robbers. The Supreme Court held that bringing defendant to trial on this second charge constituted double jeopardy because in both cases "The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury found that he had not." Ashe, 90 S.Ct. at 1195.
This case can be readily distinguished from that in Ashe. In Ashe the crime which took place was one single occurrence with six different victims. In essence, only one criminal activity took place and the second trial was therefore "constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." The instant case, however, involved two different transactions at two different places and times. Several facts suggest that Miller's identification of defendant in the second transaction was not as conclusive as the first. In the first transaction, Miller was face to face with Simon in the front seat of his vehicle. In the second, Miller was in his own vehicle, while the defendant was in another. The two made their exchange through the opened windows of their cars in a hard rain. Miller testified that he did not talk to the defendant. He also stated that the defendant left the site of the transaction and drove toward Lafayette, which is in the opposite direction from her home. It therefore seems that a jury could rationally determine that defendant was guilty of one of the counts, yet not of the other, given the fact that these involved two different transactions under totally different *614 circumstances. This assignment is without merit.

III.

(Defendant's Assignments of Error Nos. 2, 3 and 8)
By these assignments of error, defendant contends that State Exhibits 1, 2, 3 and 4[1] should not have been admitted into evidence because the State failed to establish an unbroken chain of custody of the drugs allegedly sold by defendant. Exhibit 1 consists of the evidence record and the actual cocaine obtained in the first transaction. Exhibit 3 is the lab report performed on that cocaine. Defendant's main contention is that Exhibit 1, the evidence report, is inadmissible hearsay because Virginia Castel, the evidence custodian at the time the evidence was placed in the Sheriff Department's vault, was not called to testify concerning her receipt of the cocaine from an officer of the narcotics division or her delivery of the drugs to Acadiana Criminalistics Laboratory. This report was offered in order to prove that the cocaine admitted at trial was the same cocaine which Miller had obtained from defendant on December 10, 1986. Defendant makes no specific argument as to the admissibility of the scientific analysis report and certificate of analysis and, in fact, states in brief that the objection is not directed to the handling of the drugs after they were delivered to Acadiana Criminalistics Laboratory.
The requirements for the admissibility of demonstrative evidence were set forth in State v. Sam, 412 So.2d 1082, 1086 (La.1982) as follows:
"In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Williams, 362 So.2d 530 (La.1978); State v. Provost, 352 So.2d 661 (La.1977)."
A preponderance of the evidence is sufficient to prove the connexity between the demonstrative evidence and the instant case. State v. Sweeney, 443 So.2d 522 (La.1983). Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Gordy, 380 So.2d 1347 (La. 1980).
Here, Det. Miller testified that the evidence report attached to the evidence envelope containing the cocaine had his name and the numbers which he had assigned. This number appeared not only on the evidence record, but also on the analysis certificate. Miller testified that he placed the envelopes in a cabinet in the narcotics office to be turned in to the evidence custodian the next day. The evidence custodian at the time of this transaction was Virginia Castel. Miller stated that only his lieutenant and the desk sergeant have keys to this cabinet. The drugs relevant to the first charge were, according to the evidence record, given to Castel by Lt. John Bourque.
Neither Bourque or Castel were present at the trial. Therefore, any testimony or evidence that these individuals were part of the chain of custody from the cabinet to the evidence custodian is hearsay.
The analysis certificate shows that Castel brought the cocaine to the Acadiana Criminalistics Laboratory for analysis. The chemist at the laboratory who accepted the evidence and performed the tests was called to testify. The chemist, David Epstein, testified that he knew Castel and that she both delivered and picked up the evidence in question. Frank Durand, the evidence custodian at the time of trial, testified that the evidence had been in his custody since he took the position until the trial. Therefore, the only missing link in the chain of custody involves the transfer from the cabinet to Castel. A continuous chain of custody is not essential, provided the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object which was originally seized. State v. *615 Sharp, 414 So.2d 752 (La.1982). We find that even absent the hearsay aspect of the report, the other evidence as a whole supports the trier of fact's finding that the cocaine produced at trial was more probable than not the same obtained by Miller from the defendant on December 10, 1986.
This assignment of error is without merit.

IV.

(Defendant's Assignment of Error No. 4)
By this assignment of error, defendant asserts that the trial court erred in not requiring the State to divulge the name of the confidential informant involved in the case.
A confidential informant's identity will be divulged only under exceptional circumstances, and the burden is on the defendant to demonstrate these exceptional circumstances. In such cases the trial judge is vested with much discretion in determining whether the circumstances warrant disclosure. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). Disclosure of an informant's identity should be made only when the evidence shows that the informant, in cooperation with the police, participated in the crime. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
In this case, Miller testified that the informer set up the meetings; however, he did not participate in or was he a witness to either of the drug purchases. The defendant failed to make the requisite showing and the trial court did not err in refusing to order the State to disclose the informant's identity.
This assignment of error lacks merit.

V.

(Defendant's Assignment of Error No. 7)
Defendant complains that the trial court erred in refusing to allow defense counsel the opportunity to inspect the initial police report prepared by Det. Miller. Defense counsel requested that Det. Miller produce his report during cross-examination of Det. Miller. The State objected to its production based upon LSA-R.S. 44:3 and the trial court sustained the objection. Defense counsel noted an objection to the trial court's ruling.
Defendant may obtain production of an initial incident report made by the officer(s) investigating a complaint, LSA-R.S. 44:3(A)(4)(a); State v. Barra, 500 So.2d 926 (La.App. 4th Cir.1987); however, defendant may not obtain a report disclosure of which would reveal information concerning undercover or intelligence operations, LSA-R.S. 44:3(A)(4)(c). The supplemental reports of an undercover narcotics investigation have been held to be not subject to public disclosure because such investigations by their very nature differ from investigations which arise as a result of a complaint made to elicit police intervention. Such investigations almost always involve ongoing operations with undercover police personnel and to disclose these records would require that the identity of the undercover personnel be revealed. State v. Huntley, 526 So.2d 1313 (La.App. 3d Cir.1988).
Moreover, defendant's motion for discovery was certainly not timely made. Defendant's counsel should have availed himself of the opportunity to request such reports as provided by the Code of Criminal Procedure. LSA-C.Cr.P. arts. 521 and 729. The only pretrial discovery motion filed by defendant did not request production of the police report. The trial court committed no error in denying the defendant's request to produce the police report.
This assignment of error lacks merit.
For the reasons assigned herein, defendant's conviction is hereby affirmed.
AFFIRMED.
NOTES
[1] Exhibits 2 and 4 both relate only to the count which defendant was found not guilty of. They are therefore not properly before this court and will not be considered on appeal.