631 So.2d 586 (1994)
STATE of Louisiana,
v.
Richard C. GAMBLE.
Cr-93-809.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*588 David Wayne Burton, De Ridder, for State.
Leslie R. Leavoy Jr., De Ridder, for Richard C. Gamble.
Before GUIDRY and YELVERTON, JJ., and BERTRAND, J. Pro Tem.
GUIDRY, Judge.
Defendant, Richard C. Gamble, was charged by bill of indictment with two counts of distribution of marijuana, a Schedule I controlled dangerous substance, in violation of La.R.S. 40:966(A)(1). After trial, the jury returned a verdict of guilty as charged on the first count and not guilty on the second count. The trial court sentenced Gamble to serve 72 months in the custody of the Department of Corrections to run consecutively with the sentence for which he was incarcerated at the time of trial.
Defendant appeals from the conviction on the first count and assigns 18 errors, enumerated as follows:
1. The court erred in charging the jury on the court's definition of "reasonable doubt".
2. The court erred in charging the jury on circumstantial evidence.
3. The court erred in charging the jury on intent, insofar as it included the conduct and action of the defendant.
4. The court erred in charging the jury by placing the verdict "Guilty" as preeminent, and "Not Guilty" as the last choice of a verdict.
5. The court erred in presenting jury verdict forms with "Guilty" as preeminent, and "Not Guilty" as the last choice of a verdict.
6. The court erred in refusing to grant a mistrial because the jury failed to follow the court's instructions regarding communications by the jury with the court.
7. The court erred in refusing to allow defendant's counsel to question Saul Wilson concerning his appearance in other trials as it related to his credibility.
8. The court erred in refusing to admit in evidence testimony of Saul Wilson concerning the identity of the confidential informant.
9. The court erred in admitting the testimony of undercover police witnesses concerning evidence of other crimes.
10. The court erred in refusing to admit into evidence testimony of witness Keith Latiola concerning police procedures and securing evidence.
11. The court erred in allowing the District Attorney to demonstrate evidence of contraband before the District Attorney proved that the chain of evidence was complete.
12. The court erred in announcing that the chain of evidence was complete.
13. The court erred in finding that the chain of evidence was complete.
14. The court erred in refusing to allow counsel for defendant to cross examine witness Mike Couvillion concerning his own illegal activity in connection with purchase, sale, and consumption of alcohol.
15. The court erred in refusing to grant a mistrial because of the court's improper comment on the evidence.
16. The court erred in refusing to grant a mistrial because of misconduct of the District Attorney's investigator during the trial.
17. The court erred in admitting the testimony of witness Robert McCullough, and admitting certain documents that were not provided in pretrial discovery.
18. The court erred in refusing to admit in evidence testimony of Mike Couvillion concerning his own credibility.
Defendant failed to argue assignment of error number 16 in brief. Failure to so argue constitutes a waiver of the error assigned. State v. Lewis, 576 So.2d 1106 (La. App. 3rd Cir.1991), writ denied, 580 So.2d 669 (La.1991); Uniform RulesCourts of Appeal, Rule 2-12.4. This assignment is deemed abandoned.

FACTS
Gamble's conviction is the result of a March 8, 1990 transaction in which he helped undercover officers purchase marijuana. Deputy Saul Wilson of the Beauregard Parish *589 Sheriff's Office coordinates narcotics investigations in the parish. It is routine practice for local authorities to enlist the aid of investigators from other parts of the state to work undercover. Deputy Wilson contacted Keith Latiola of the Acadia Parish Sheriff's Office and Mike Couvillion of the Vermilion Parish Sheriff's Office, investigators with the Fifteenth Judicial District Narcotics Task Force, to do undercover work.
On March 8 1990, the undercover agents met Deputy Wilson at a DeRidder, Louisiana motel. Deputy Wilson introduced the agents to a confidential informant. He instructed the trio to go out into the local area and attempt to purchase illegal drugs. The informant directed the agents to a residence, where Gamble's mother informed them that he was in Bryant Park. The agents arrived at the park at approximately 4:30 p.m. and found several black males, including Gamble, playing basketball. The defendant invited the agents to join the group in the ball game. In his testimony, Agent Latiola explained that he and Agent Couvillion had met Gamble the day before.
The agents played basketball until dark, at which time Agent Latiola told Gamble that he was "looking to buy a sack". It was explained that a "sack" referred to marijuana. The agent asked Gamble if he knew where he could find one. The defendant, accompanying the agents and the informant, directed them to David Boudin's residence, located on Lee Eason Road south of DeRidder. They arrived at the residence at approximately 7:00 p.m. A white male was burning leaves in the front yard, illuminating the yard and the front of the house. The agents gave the defendant $25. Gamble instructed the agents to drive past the house, turn around and pick him up, which they did. After he exited the vehicle, the defendant walked toward the house and talked to a white female. Meanwhile, a second vehicle arrived and another black man approached the woman as well. Agent Couvillion saw the defendant and the woman make hand contact. However, he did not view what, if anything, was exchanged.
When the defendant returned to the vehicle he placed a work glove on the car dash board. A clear plastic bag containing green leafy vegetable material was inside the glove. After they drove off, defendant took a small portion of the material and, with rolling papers produced from his pocket, rolled himself a cigarette. The agents dropped Gamble off near his house.

ASSIGNMENT OF ERROR NO. 1
The defendant alleges the trial court erred in charging the jury on the definition of "reasonable doubt". The defendant complains that the use of the term "substantial" in the definition was prejudicial to him and lessened the burden of proof placed upon the State.
La.C.Cr.P. art. 804(A) mandates that in all cases the court shall charge the jury that a person accused of a crime is presumed by the law to be innocent until every element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt. The court is not required to define "reasonable doubt", but is given the discretion to do so.
In its instructions to the jury, the trial court explained reasonable doubt as follows:
While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. What is required is that the State prove the guilt of the defendant to your satisfaction and beyond a reasonable doubt.
A reasonable doubt is exactly what it says. It is a doubt that you can give a good, sensible reason for having. It is not a mere possible, frivolous or fanciful doubt, but an actual substantial doubt. In other words, reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say you are firmly convinced of the truth of the charge.
At a hearing on the matter of jury instructions, defense counsel objected to the use of the word "substantial", arguing it was not a correct statement of the law and requested that the word be stricken from the instruction. The trial judge overruled the objection.
The purpose of reviewing a reasonable doubt jury instruction is to ensure that the trial judge did not overstate the degree *590 of doubt required. As a reviewing court construing the instruction, we are required to consider how reasonable jurors could have understood the charge as a whole. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The jury charge in Cage defined reasonable doubt using the phrases "grave uncertainty", "actual substantial doubt" and "moral certainty". The United State Supreme Court held that the words "grave" and "substantial", when considered in reference to "moral certainty" rather than evidentiary certainty, could have led a reasonable juror to interpret the instruction "to allow a finding of guilt based on a degree of proof below that required by the due process clause". Cage, supra, at 308, 111 S.Ct. at 330. The court thus concluded the instruction was unconstitutional error.
On remand, the Louisiana Supreme Court determined that the trial error was subject to the harmless error analysis originally established in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court, in affirming the conviction, concluded that the error was harmless beyond a reasonable doubt in view of the overwhelming evidence of the defendant's guilt. State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, sub nom. Cage v. Louisiana, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).[1]
In State v. Smith, 600 So.2d 919 (La.App. 4th Cir.1992), the court held that, while the phrase "actual or substantial doubt" is not the best language to use in defining reasonable doubt, it did not rise to the unconstitutional level present in Cage. Likewise, in State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La. 1993), the Second Circuit concluded that the descriptive phrase "doubt ... founded upon some real, tangible, or substantial basis", while perilously close to the prohibited language of Cage, nonetheless was not erroneous when construed in the contest of the entire charge.
In the present case, viewing the jury instruction as a whole, we conclude that a reasonable juror could not have interpreted the "actual substantial doubt" instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. As in Smith and Daniels, this language is not advisable in defining reasonable doubt. However, without any other augmenting phrases which would, in the minds of reasonable jurors, tend to inflate the degree of doubt required, the phrase "actual substantial doubt", when considered in light of the entire jury charge, does not equate with the unconstitutional charges present in Cage and Sullivan. For these reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Gamble alleges that the trial court erred in charging the jury on circumstantial evidence and in charging the jury on intent. The defendant argued that there was no circumstantial evidence presented and therefore the instruction on circumstantial evidence was inappropriate and confusing to the jury. The defendant also argued that the charge on intent, insofar as it included the conduct and actions of the defendant, gave credence to the testimony of the undercover agents and therefore was an improper comment on the evidence.
The jury was charged as follows:
In law there are two methods by which facts can be established: by direct evidence and by circumstantial evidence. Direct evidence is evidence which, if believed, proves a fact. The testimony of a witness to facts which he has actually seen, heard or experienced is direct evidence of those facts.

*591 Circumstantial evidence or indirect evidence is evidence which, if believed, proves a fact, and from that fact you may logically and reasonably conclude that another fact exists. In other words, circumstantial evidence is the proof of a chain of facts and circumstances which may tend to show whether the defendant is guilty or not guilty. Circumstantial evidence is competent evidence and must be considered by the jury along with any direct evidence which may have been presented at the trial. Guilt may be established by circumstantial evidence alone, provided it excludes every reasonable hypothesis or theory of innocence. When the evidence in a case consists exclusively of circumstantial evidence, the rule is: assuming every fact to be proved that the evidence tends to prove, in order to convict the defendant, every reasonable hypothesis or theory of innocence must be excluded.
The defendant was charged with the violation of La.R.S. 40:966(A)(1) which provides:
A. Manufacture; Distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I;

. . . . .
This statute requires general criminal intent. State v. Banks, 307 So.2d 594 (La. 1975). La.R.S. 14:10(2) states, in pertinent part, "general criminal intent is present ... when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act". (emphasis added) Barring a confession by the defendant, this intent must be proved by circumstantial evidence. The intent required in La.R.S. 40:966 can be established by mere proof of voluntary distribution. State v. Williams, 352 So.2d 1295 (La.1977).
These jury charges were correct statements of the law applicable to the offense charged. Factually, no witness testified that Gamble was seen actually exchanging marijuana for money. The testimony was generally to the effect that defendant got out of the car, went to the house, and returned with a glove containing a green vegetable material later identified as marijuana. These are circumstances from which a reasonable juror could infer the requisite intent to distribute and, therefrom, his guilt. As such, the charges neither misled the jury, nor did they constitute an improper comment on the evidence.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
The defendant contends that the trial court erred by placing the verdict of "Guilty" first and that of "Not Guilty" last in the jury charge and on the verdict form. He argues that the order of possible verdicts prejudicially diluted the presumption of innocence.
As discussed previously, in analyzing a jury instruction, the test is, whether taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. Cage v. Louisiana, supra; State v. West, 568 So.2d 1019 (La.1990).
The trial judge directed the jurors to follow the instructions and to accept and apply the law as stated to them. He informed them that the order in which the instructions were given did not indicate that one instruction was more important than the other. Rather all the instructions were equally important. The court further told jurors that by law, the defendant was presumed innocent until proven guilty, which required the State to prove each element of the crime charged beyond a reasonable doubt. The court then instructed the jury as to the elements of the crime charged, the lesser included offenses, and that jurors had to return a verdict of guilty of the crime charged, a lessor included offense or not guilty. Additionally, the judge reiterated that it was the jury's duty to find the defendant guilty only of what the State had proven beyond a reasonable doubt and that if reasonable doubt existed as to all possible verdicts, *592 then it was their duty to find the defendant not guilty.
The written verdict list, which is required pursuant to La.C.Cr.P. art. 809, enumerated the possible verdicts in the order set out in La.C.Cr.P. art. 814(A)(48). The list began with "Guilty" and progressed down the possible responsive verdicts to that of "Not Guilty". The jury instructions taken as a whole clearly set out the presumption of innocence accorded the defendant by law and the jury's duty thereunder, such that a reasonable person of ordinary intelligence would understand. In light of clear instructions given to the jury, the placing of the verdict of "Not Guilty" after the "Guilty" verdict and the other responsive verdicts did not negate or dilute the presumption of innocence. This conclusion is further supported by the fact that the jury returned a verdict of "Not Guilty" on the second count. Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 6
The defendant alleges that the trial court erred in refusing to grant a mistrial based on the jury's failure to follow the court's instructions regarding communication by the jury with the court. The grounds for a mistrial are listed in La.C.Cr.P. art. 775 as follows:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
In the present case the jury returned to the courtroom after reaching a verdict. Before the clerk was handed the verdict sheets, the foreman asked to confer with the judge concerning the way in which he wrote out the two verdicts. The judge told the foreman that he should have written "one of the sets of words that were on the front ... basically cop[ying] the one that you selected that matches the verdict you selected". The judge then instructed the jury to again retire to conform the phraseology of the written verdict to the formula words provided on the front of the verdict sheet. Additionally, he told the foreman to mark through what he had first written and initial the correction.
The jury returned this written verdict on the first count:
*593 
The communications between the jury and the court were made in open court and thus, recorded. The judge, in causing the jury to retire a second time after it had already reached its verdict, was acting properly under La.C.Cr.P. art. 813 which provides:
If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
The procedure employed by the trial court to obtain a conforming verdict does not qualify as a ground for a mistrial pursuant to La.C.Cr.P. art. 775 and thus, the trial court acted properly in denying the defendant's motion. The communication was not prohibited and was only intended by the foreman to receive clarification from the judge as to how to word the verdict. This is not a legal or procedural defect and it certainly was not prejudicial to the defendant.

ASSIGNMENT OF ERROR NO. 7
Gamble asserts the trial court erred in refusing to allow the defendant's counsel to question Deputy Wilson regarding his appearances in other trials as it related to his credibility. The defendant sought to introduce evidence concerning the methods, schemes, and proclivities employed during undercover operations. Deputy Wilson was acting in a supervisory capacity in the present case and did not take part in any undercover work.
The State objected on relevance grounds twice during defense counsel's questioning of Deputy Wilson about other cases and trials. In both instances, the court sustained the objections based on a lack of proper foundation for the questions. The first objection followed a question inquiring as to the amount of drugs involved in other cases where the deputy performed undercover work in other parishes. In response, defense counsel argued that he was being prevented from challenging Deputy Wilson's credibility. The second instance followed a defense question seeking the deputy's explanation as to why he did not ask for a fingerprint analysis of the plastic bag containing the marijuana from the March 8, 1990 transaction. In response, the deputy explained that such analysis would be useless since the agents had handled the bag and that one "can't pick it up with tweezers ...". This prompted the defense counsel to ask if the deputy knew of the "tweezers routine" from the last case in which he had testified. In response to the State's objection, the defense counsel argued a ruling against him would prevent him from proving the defense of conspiracy.
*594 Defense counsel failed to either object to the ruling, as required by La.C.Cr.P. art. 841(A) to preserve the objection for appeal, or attempt to lay a proper foundation and then ask the question again. Technically speaking, defendant failed to properly preserve this assignment of error for appeal. In any event, the assignment lacks merit due to the irrelevancy of prior investigations to the issue at hand, whether this defendant distributed marijuana to undercover officers on the specific dates alleged in the bill of indictment. La.C.E. arts. 401, 406.

ASSIGNMENT OF ERROR NO. 8
The defendant contends that the trial court erred in refusing to admit into evidence the testimony of Deputy Wilson concerning the identity of the confidential informant. The defendant argued that since the confidential informant was no longer engaged in undercover activities, an exception should have been made to the general rule that the State is not required to divulge the identity of the confidential informant.
The informer privilege, which in reality is the State's privilege to withhold from disclosure the identity of persons who supply information concerning crime to law enforcement officials, is well established. Its purpose is to advance the public interest in effective law enforcement by preserving the anonymity of informants and encouraging them to report crimes. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). In Oliver, supra, at 652, the court stated:
This court has consistently held that a confidential informant's identity will be divulged only under exceptional circumstances. State v. Babbitt, 363 So.2d 690 (La.1978); State v. Robinson, 342 So.2d 183 (La.1977). The general rule is that the burden is upon the defendant to demonstrate exceptional circumstances and much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure. State v. Babbitt, supra; State v. Robinson, supra.

At trial the defense counsel twice questioned Deputy Wilson as to the identity of the confidential informant. Each time the State objected to this question. Both times the only justification given by the defendant for identifying the informant was that he was no longer working as an informant and had moved out of the parish. We conclude that this reason does not qualify as an exceptional circumstance. Accordingly, the trial court did not err in refusing to force Deputy Wilson to divulge the informant's identity. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 9
The defendant next asserts that the trial court erred in admitting into evidence the testimony of the undercover agents concerning evidence of other crimes. Pursuant to La.C.E. art. 404(B)(1), evidence of other crimes, wrongs or acts are generally not admissible to prove character. However, the article provides for exceptions to this rule, which include admission for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
At the hearing on the evidence's admissibility, the defense counsel acknowledged he had received adequate notice of the State's intention to use other crimes evidence regarding an incident on April 25, 1990, in which the defendant allegedly passed a halfsmoked marijuana cigarette to an agent. The defense counsel objected on the basis that the probative value of the evidence was outweighed by its prejudicial nature. The defendant first argued that the evidence was too prejudicial because the grand jury proceeding considering the matter had not been made available to him. The defendant also argued that his client would be prejudiced if Officer Basco, who participated in the transaction, was allowed to testify that, at the time of the incident, the defendant stated he "could sell marijuana as fast as he could get his hands on it because there was not much marijuana to find". The State argued that the grand jury proceeding was irrelevant, *595 and that the defendant's statement was admissible regardless of whether the officer was allowed to testify that the defendant passed him a marijuana cigarette.
The judge found that evidence of this act or transaction was of a similar nature and showed a pattern or plan of distribution. The judge also noted that the grand jury finding on the April 25, 1990 transaction was not binding on the petit jury in the present case. For these reasons, the judge ruled that the evidence was admissible, but would be allowed only for purposes provided in the Louisiana Code of Evidence. In response to this ruling the defendant counsel moved for a mistrial prior to the evidence being presented to the jury. The judge denied the motion.
La.C.E. art. 404, effective January 1, 1989, replaced La.R.S. 15:445 and 15:446. The comments to article 404 show that no change in the law was intended relative to the admissibility of other crimes evidence. The test for admissibility of other crimes evidence was set forth in State v. Talbert, 416 So.2d 97, 99 (La.1982):
Generally, evidence of other crimes committed by the defendant is inadmissible due to "substantial risk of grave prejudice to the defendant". However, there are certain exceptions to this exclusionary rule. Under La.R.S. 15:445 and 446, evidence of acts similar to that charged is admissible to show intent, knowledge, or system. Beyond the literal terms of these statutes, this Court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. In State v. Hatcher, 372 So.2d 1024 (La.1979), this Court discussed fully the requirements for admissibility of other crimes evidence under the modus operandi exception.
"In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect." (Citations omitted)
In the present case Agent Basco testified about the April 25, 1990, transaction in which he and Agent Couvillion received a half of a marijuana cigarette from the defendant. Agent Basco identified the defendant in court. Lab analysis confirmed the cigarette contained marijuana. Thus, clear and convincing evidence was presented of the crime and the defendant's connection therewith.
Agent Basco testified that he and the other agent picked up the defendant in the agent's car and followed the defendant's directions to the place where the defendant was to acquire marijuana. The officers gave the defendant money, and the defendant got out of the car to acquire the marijuana while the agents waited in the car. This is the same modus operandi employed by the defendant in the crimes charged in the present case.
The evidence presented of the April 25, 1990 transaction helped to establish the identity of the defendant and a pattern or plan of distribution. Therefore, the evidence was substantially relevant for some purpose other than showing the defendant is a man of criminal nature. The evidence of the identity and mode of operation of the defendant were material facts genuinely at issue.
Considering the foregoing, the probative value of the other crimes evidence outweighed its prejudicial effect. Therefore, the trial court committed no error in admitting the evidence and properly denied the motion for mistrial based thereon.

ASSIGNMENT OF ERROR NO. 10
The defendant alleges that the trial court erred in refusing to admit into evidence the testimony of Officer Keith Latiola concerning police procedures for securing evidence. The defendant argues that the question of whether *596 or not an officer is aware of such procedures is relevant.
Relevant evidence is that which tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La.C.E. art. 401. Great discretion is afforded a trial judge in determining the relevancy of evidence. State v. Johnson, 343 So.2d 155 (La.1977).
The first question regarding police procedure, to which the State objected, was whether including the date on the transaction report was a matter of normal police procedure. The officer had already testified that he did not include the transaction date on the report document. The judge did not rule on the objection, but suggested that the defense counsel move on to another line of questioning. The defense counsel complied.
The second such question addressed what the officer thought should have happened to the glove used to conceal the marijuana in the March 8, 1990 transaction. The officer had already testified that he had given the glove to Deputy Wilson and that the deputy or one of his evidence officers should have the glove. When the question was asked again, the State objected and explained that the witness had already answered to the best of his ability. The defense counsel argued that what this police officer would do differently from the Beauregard Parish Sheriff's Office was important to the jury. The judge ruled that this evidence was not relevant. At the bench conference which followed, the court requested defense counsel cease asking such questions for which the witness had no personal knowledge.
The defense acquiesced to the judge's handling of the first question. Therefore, the defendant cannot now complain. As to the court's ruling on the second question, the trial judge did not abuse his discretion in finding the evidence irrelevant. The presence or absence of the glove as part of the transaction was a factor for the jury to use in determining the credibility of the agents. However, Agent Latiola's opinion on where he thought the glove should be (if different from where it actually was) did not in any way enhance or detract from the agent's credibility. The whereabouts of the glove were indeed irrelevant. For these reasons, this assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 11, 12, 13 AND 15
The defendant contends that the trial court erred in allowing the district attorney to demonstrate evidence of contraband before proving that the chain of evidence was complete. The defendant also alleges error occurred when the trial court announced that the chain of custody of the evidence was complete. In response, his counsel moved for mistrial, which was denied. The announcement, the defendant argues, was an improper comment on the evidence by the judge and his motion for mistrial should have been granted.
La.C.E. art. 901(A) provides:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
The comments to paragraph A state that this article does not expressly require the proponent of real evidence to demonstrate that the so-called "chain of custody" is intact as part of his proof of authenticity. However, the comment further explains that the article is not intended to change the prior law requiring the proffering party to show that the proffered item is the original and did not change, if these considerations may have a bearing on the relevance of the evidence.
Admissibility of evidence is a question of law for the judge. This court in State v. Jones, 587 So.2d 787 (La.App. 3rd Cir.), writ denied, 590 So.2d 78 (La.1991), stated:
Evidence is admissible at trial if properly identified. Physical evidence is admissible if the chain of custody is established from the time of seizure to the time it is offered in evidence. The law does not require that the evidence relating to chain of custody eliminate all possibilities regarding identification. It suffices if the evidence establishes that it is more probable than not that the object offered in *597 evidence is the one connected with the case. A preponderance of the evidence is sufficient. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Sweeney, 443 So.2d 522 (La.1983). State v. Simon, 544 So.2d 610 (La.App. 3rd Cir.1989), writ denied, 550 So.2d 647 (La.1989). (Emphasis ours)
The State presented sufficient evidence to support admissibility. Each of the agents testified regarding how they acquired the evidence and what they then did with the evidence.
Agent Latiola testified that during the transaction on March 8, 1990, he received a bag of marijuana from the defendant and later turned the bag over to Deputy Wilson. The bag was placed in an envelope, which was marked with the time and date and initialed on the back by each agent and Deputy Wilson. Deputy Wilson stored the evidence in a locked drawer in the narcotics office until the time he transported it to the Southwest Louisiana Crime Lab in Lake Charles, Louisiana. The crime lab forensic analyst, Christy Davis, testified as to her receipt of the evidence, handling during the analysis and what she did with it when she completed the analysis. Deputy Robert McCullough picked up the evidence from the crime lab, transported it back to DeRidder, and placed it in the Sheriff's Office's evidence room until he turned it over to the prosecutor.
Agent Basco testified that during the April 25, 1990 transaction, he received a half burned marijuana cigarette. He turned it over to Deputy Wilson who followed the same procedures previously used and took it to the crime lab. The evidence was analyzed by Christy Davis. Deputy McCullough retrieved the evidence from the crime lab, following the same procedures until he turned it over to the prosecutor on the morning of the trial.
Agent Couvillion testified that he received ten marijuana cigarettes from the defendant on June 28, 1990. He turned them over to Deputy Wilson who followed the usual procedures and took it to the crime lab where it was analyzed by Christy Davis. Deputy McCullough retrieved the evidence from the lab and secured it in the evidence room until trial when he turned it over to the prosecutor.
Considering the testimony presented, the State sufficiently established the chain of custody. It is more probable than not that the evidence was that which had been acquired from the defendant and that it had not been tampered with. Therefore, the trial court properly admitted the evidence at trial. Since the evidence was properly admitted, the question of whether the evidence was prematurely demonstrated to the jury is moot.
In State v. Butler, 615 So.2d 496, 504 (La. App. 3rd Cir.1993), in ruling on the admissibility of demonstrative evidence, the trial judge stated, "... from the time of the purchase forward, the chain of custody appears to be complete to the court, so the court will accept the evidence ..." In reviewing the case on appeal, this court, citing State v. Guin, 444 So.2d 625 (La.App. 3rd Cir.1983), held that a ruling on admissibility of evidence and remarks by the trial judge giving reasons therefor are not objectionable as comments on the evidence unless such remarks are unfair or prejudicial. This court ruled that such comments were not relevant to the guilt or innocence of the accused and that the defendant had shown no unfairness or prejudice resulting from the trial judge's comments.
In admitting the evidence in the present case, the following exchange took place in open court:
BY DEFENSE COUNSEL,
To which we strenuously object to S-2. Or let me make sure. S-1, S-3 and S-5 as the chain of custody has not been met, and also as to the alleged FAXed copies, S-12, S-11, and S-10, which were not provided in discovery and should have been. And to the first page of S-6, because it's not an original, which is the best evidence.
BY THE COURT:
All right, Ms. Lindsay, would you pass those exhibits back to me and let me examine them, please. The Court having examined the exhibits submitted for entry into evidence and having considered the arguments *598 of counsel at side-bar earlier, will and having examined these exhibits personally during the last few moments, will admit S-1 through 12 into evidence. We'll note the Defense objection to the same for the record.
A thorough review of the record reveals that the trial judge never declared the chain of evidence complete. The defendant showed no unfairness or prejudice resulting from the judge's ruling on the objection. For these reasons, these assignments of error are without merit and the trial court properly denied the defendant's motion for mistrial.

ASSIGNMENT OF ERROR NO. 17
Gamble alleges that the trial court erred in admitting the testimony of Deputy McCullough and admitting certain documents that were not provided in pretrial discovery. The defendant argued that his motion for mistrial based on the admission of this evidence was improperly denied. The documents in question, copies of evidence receipts labelled S-10, S-11 and S-12, were signed by Deputy McCullough when he retrieved the marijuana from the Southwest Louisiana Crime Lab.
The State admitted in its brief that copies of the receipts were not provided to the defense counsel. It argues, however, that the defendant has not shown he was prejudiced in any manner by the introduction of the receipts into evidence. Additionally, the State notes that it gave a blanket authorization for defense counsel to view any and all documents in their possession which were discoverable pursuant to La.C.Cr.P. art. 718.
Contrary to the defendant's claim, the receipts were corroborative of the testimony of Deputy McCullough. They were not necessary to establish the chain of custody of the marijuana.
In State v. Thomas, 598 So.2d 639 (La. App. 3rd Cir.1992), writ denied, 604 So.2d 965 (La.1992), this court held that since the State had given a blanket authorization for the inspection of documents in their possession and the defendant could show no unnecessary prejudice, the trial court correctly denied the defendant's motion for mistrial.
On the second day of trial, after the State had rested, a hearing was held prior to the jury's return. At the hearing the defendant moved for a mistrial based on the State's failure to provide copies of the evidence receipts. Because the defendant was authorized to view all discoverable documents and made no showing of prejudice at trial due to the State's failure to forward a copy of the receipts, the trial court was within its discretion to admit into evidence the documents. Additionally, the court correctly denied the defendant's motion for mistrial based thereon.
Upon review of the transcript, we find no objection to the testimony of Deputy McCullough. Since there was no objection at trial, defendant failed to preserve his right to appeal this alleged error. For the foregoing reasons, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 14 AND 18
The defendant alleges that the trial court erred in refusing to allow the defense counsel to examine Agent Couvillion concerning alleged illegal activity in which the witness was engaged as it related to the witness' credibility. The defendant alleged that Agent Couvillion brought beer to a June 28, 1990 meeting with the defendant and drank it with the defendant. Beauregard Parish is a "dry parish" in which the sale of alcohol is prohibited.
Evidence was insufficient to establish that Agent Couvillion engaged in any illegal activity. The agent testified that he purchased the beer in Calcasieu Parish. Additionally, the defendant was acquitted of the charge based on the transaction which occurred on this date. He cannot now complain of police methods utilized in a transaction for which he was not convicted. These assignments of error lack merit.

CONCLUSION
For the above and foregoing reasons, defendant's conviction and the sentence imposed are affirmed.
AFFIRMED.
NOTES
[1] In Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), a case involving a jury charge identical to the one held unconstitutional in Cage, the United States Supreme Court unanimously ruled that harmless error analysis does not apply to a constitutionally deficient reasonable doubt instruction. The court reasoned that, because in such a case, there has been no jury verdict within the context of the Sixth Amendment right to trial by jury, the premise for harmless error analysis (examination of the actual effect of the error on the guilty verdict in the particular case) is not present. Thus, an unconstitutional reasonable doubt instruction now requires reversal per se without reference to the additional inquiry of whether the error was harmless.